UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN H. RUGG and PATRICIA A. RUGG,<br><br>     Plaintiffs,<br><br>VERSUS<br><br>FMR CO., INC., STRATEGIC ADVISERS, INC.,<br>MATTHEW GIBSON, DAN DAVIDSON (*sic*), and<br>JEROME SKOW,<br><br>     Defendants. | CIVIL ACTION NO.  09-1952<br><br>JUDGE JAMES<br><br>MAGISTRATE JUDGE HAYES |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS I, V, AND VI
OF PLAINTIFFS' COMPLAINT AND TO DISMISS FMR. CO., INC.,
MATTHEW GIBSON, DAN DAVIS, AND JEROME SKOW AS DEFENDANTS**

George C. Freeman, III, 14272, T.A.
Meredith A. Cunningham, 26465
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:   (504) 589-9700
Facsimile:   (504) 589-9701

*Counsel for Defendants FMR Co., Inc.,
Strategic Advisers, Inc., Matthew Gibson,
Dan Davis, and Jerome Skow*

*Of Counsel*:

David C. Boch
Michael R. Weissmann
Michael C. Moran
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726
Telephone:   (617) 951-8000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

        A.      The Parties ..................................................................................................... 2

        B.      Plaintiffs' Allegations .................................................................................... 2

III.    ARGUMENT ............................................................................................................. 4

        A.      Counts I, V, and VI Lack Facial Plausibility .............................................. 4

        B.      Count I, Plaintiffs' Claim for "Rescission/Nullity", Must Be Dismissed
                Because Federal Law Preempts State Registration Requirements for
                Investment Advisers, and Plaintiffs Do Not Allege Any Defect in Formation
                of a Contract................................................................................................... 5

        C.      Count V for Gross Negligence Must Be Dismissed Because
                Plaintiffs Do Not Allege Willful, Wanton, and Reckless Conduct.............. 8

        D.      Count VI, Plaintiffs' Shotgun Claim of "Breach of State and Federal Law"
                Must Be Dismissed for Failure to Plead Specific Counts, and Plaintiffs Cannot
                State a Claim for Any of the Laws Mentioned in this "Count" ................... 10

                1.      Plaintiffs Cannot State a Claim for Violation of LUTPA Because LUTPA
                        Claims Are Precluded in the Securities Context.............................. 11

                2.      Plaintiffs Cannot State a Louisiana Securities Law Claim Because They
                        Do Not Plead A Knowing Misrepresentation .................................. 12

                3.      Plaintiffs Cannot State a Claim for a Violation of the Investment Advisers
                        Act Because the Act Does Not Provide for a Private Right of Action ......... 14

        E.      FMR Co., Inc. and the Individual Defendants Are Not Proper Parties and
                Should Be Dismissed From the Suit.............................................................. 15

                1.      FMR Co., Inc. Is An Adviser to Fidelity Mutual Funds and Could Not
                        Have Had Any Relationship with Plaintiffs.................................... 15

                2.      No Count Names the Individual Defendants ................................... 16

IV.     CONCLUSION......................................................................................................... 17

CERTIFICATE OF SERVICE ........................................................................................ 19

149959

## TABLE OF AUTHORITIES

### CASES

*Alfaro Motors. Inc. v. Ward,*
  814 F.2d 883 (2d Cir. 1987)........................................................................ 19

*Ashcroft v. Iqbal,*
  ___ U.S. ___, 129 S. Ct. 1937 (2009) ........................................... 4, 10, 16

*Bell Atl. v. Twombly,*
  550 U.S. 544 (2007)............................................................................... 4, 11

*Conley v. Gibson,*
  355 U.S. 41 (1957)...................................................................................... 11

*Davis v. Bayless,*
  70 F.3d 367 (5th Cir. 1995) ......................................................................... 6

*Eades v. Thompson,*
  823 F.2d 1055 (7th Cir. 1987) .................................................................... 19

*Flaherty & Crumine Preferred Income Fund, Inc. v. TXU Corp.,*
  565 F.3d 200 (5th Cir.), *cert. denied,* 130 S.Ct. 199 (U.S. 2009)....................... 14, 15

*Houston Exploration v. Halliburton Energy Serv.,*
  269 F.3d 528 (5th Cir. 2001) .................................................................. 9, 10

*In re Alcatel Sec. Litig.,*
  382 F. Supp. 2d 513 (S.D.N.Y. 2005)........................................................ 15

*In re Merrill Lynch Investment Mgmt. Funds,*
  434 F. Supp. 2d 233 (S.D.N.Y. 2006)........................................................ 15

*Kirkland v. Bianco,*
  595 F. Supp. 797 (S.D.N.Y. 1984) ............................................................. 20

*Massachusetts School of Law v. American Bar,*
  853 F. Supp. 843 (E.D. Pa.), *aff'd,* 107 F.3d 1026 (3rd Cir.), *cert. denied,* 522
  U.S. 907 (U.S. 1997)................................................................................... 20

*Ponthier v. Manalla,*
  951 So.2d 1242 (La. App. 5th Cir. 2007) .................................................. 14

*Raab v. General Physics Corp.,*
  4 F.3d 286 (4th Cir. 1993) ......................................................................... 10

*Sargent v. Riley,*
  No. 02-1857, 2003 WL 30418 (E.D. La. Jan. 3, 2003)............................... 12

*State v. Vinzant,*
  200 La. 301 (1942) ........................................................................................ 9

*Stephenson v. Paine Webber Jackson & Curtis,*
  839 F.2d 1095 (5th Cir.), *cert denied,* 488 U.S. 926, 109 S.Ct. 310 (U.S. La.
  1988) ..................................................................................................... 12, 13

*Taylor v. First Jersey Sec.,*
  533 So.2d 1383 (4th Cir.), *writ denied,* 538 So.2d 594 (La. 1989) .......... 13, 14, 15

*Transamerica Mortgage Advisors, Inc. v. Lewis,*
  444 U.S. 11 (1979)...................................................................................... 17

149959

## OTHER AUTHORITIES

15 U.S.C. § 80b-3a(b)(1)(A) ............................................................................... 6

Fed. R. Civ. P. 10(b) ..................................................................................... 5, 11

Fed. R. Civ. P. 12(e) ......................................................................................... 12

Fed. R. Civ. P. 8(a)(2) .......................................................................... 5, 11, 19

Fed. R. Civ. P. 9(b) .......................................................................................... 14

La. Act No. 274 of 2008 ................................................................................. 6, 7

La. Civ. Code art. 2029 ...................................................................................... 8

La. Civ. Code arts. 1921, 1964 ......................................................................... 8

La. R.S. § 51:702(3) .......................................................................................... 13

La. R.S. § 51:703(D)(2) ...................................................................................... 6

La. R.S. § 51:703(D)(3) ...................................................................................... 7

La. R.S. § 51:710(A)(1) ..................................................................................... 13

149959

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN H. RUGG and PATRICIA A. RUGG, <br><br> Plaintiffs, <br><br> VERSUS <br><br> FMR CO., INC., STRATEGIC ADVISERS, INC., MATTHEW GIBSON, DAN DAVIDSON (*sic*), and JEROME SKOW, <br><br> Defendants. | CIVIL ACTION NO.  09-1952 <br><br> JUDGE JAMES <br><br> MAGISTRATE JUDGE HAYES |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS I, V, AND VI
OF PLAINTIFFS' COMPLAINT AND TO DISMISS FMR. CO., INC.,
MATTHEW GIBSON, DAN DAVIS, AND JEROME SKOW AS DEFENDANTS**

### I.    INTRODUCTION

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendants FMR Co., Inc. ("FMR"), Strategic Advisers, Inc. ("SAI"), Matthew Gibson, Dan Davis, and Jerome Skow submit this Memorandum of Law in Support of their Motion to Dismiss. SAI moves to dismiss Counts I, V, and VI of Plaintiffs' Petition for Damages ("Complaint"), with prejudice.  SAI is separately filing an Answer to Counts II, III, and IV of the Complaint. FMR and Messrs. Gibson, Davis, and Skow join in SAI's motion to dismiss Counts I, V, and VI, and separately move to dismiss this action as against them in its entirety.

Among other incurable flaws, Plaintiffs attempt to invoke the Louisiana Unfair Trade Practices Act, despite clear law holding that such a claim is *precluded* in the securities context. Plaintiffs also attempt to invoke the Investment Advisers Act, despite the long-established Supreme Court holding that *there is only a narrow right of action* under that Act, which

Plaintiffs do not come close to satisfying.  Further, impermissibly vague counts in the Complaint do not meet even the most basic pleading requirements of Federal Rules of Civil Procedure 8(a) and 10(b).  In addition, certain of the Complaint's vague allegations sound in fraud, but Plaintiffs fail to plead any facts with particularity as required by Rule 9(b) -- a rule that is interpreted strictly by the Fifth Circuit.  For all of these reasons, as described below, Defendants' Motion to Dismiss should be granted, with prejudice.

## II.    BACKGROUND

### A.    The Parties.

Plaintiffs are husband and wife and both are allegedly sophisticated investors with "significant investment and retirement portfolios."  Complaint at ¶¶ 2 - 4.  The Complaint alleges that "prior to 2001, Strategic Advisors, Inc. was organized and operated as a registered investment advisor company associated with Fidelity Investments company [*sic*], a trade name used by FMR Co., Inc."  *Id.* at ¶ 5.  Matthew Gibson, Dan Davis, and Jerome Skow are alleged to be agents of SAI.  *Id.* at ¶ 6.  Plaintiffs allege -- incorrectly, as will be shown below -- that FMR Co., Inc. (referred to as "Fidelity" by Plaintiffs) "was organized and operated as a brokerage and/or advisor service closely aligned with Strategic Advisers, Inc."  *Id.* at ¶ 7.

### B.    Plaintiffs' Allegations.

The Complaint alleges that, in early 2001, the Ruggs spoke with Mr. Gibson who assisted them in opening three investment advisory accounts managed by SAI -- a joint account and two individual retirement accounts ("IRAs").  Complaint at ¶¶ 14 & 20.  By way of background, SAI manages customer accounts through a program called Portfolio Advisory Services ("PAS"), in which the Ruggs invested.  Complaint at ¶ 8.  Customers interested in opening a PAS account complete an Investor Profile Questionnaire ("IPQ").  Complaint at ¶ 9.  SAI uses the IPQ to collect information about the customer including age, planned investment time horizon, financial situation, and risk tolerance.  Complaint at ¶¶ 9, 16, & 18.  SAI analyzes the information collected in the IPQ and determines which of several target portfolio strategies best matches the

2

customer's investment goal, time horizon and risk tolerance.  After identifying the appropriate portfolio, based upon the information the customer supplies, SAI prepares a proposal and presents it to the customer.  Once the customer reviews the proposal, he or she can either accept it, decide not to invest with SAI, or update the information in the IPQ and ask that an updated proposal be run.  When a customer opens a PAS account, the account agreement vests discretion in SAI investment managers to select investments consistent with the designated portfolio.  Once an account is opened, each customer is assigned to a relationship officer whom they may call at any time to ask questions or obtain further information.  Complaint at ¶ 21.  On an annual basis, the relationship officer conducts a strategic review with the customer to review the account's performance and the customer's information then on file and to make updates, if necessary.  Complaint at ¶ 11.

At the time they opened their accounts, the Ruggs completed a questionnaire, in which they provided SAI with information regarding their ages and expected retirements.  Complaint at ¶ 9.  Mr. and Mrs. Rugg identified their expected retirement ages as 60 and 55 respectively.  *Id.* After opening their accounts, the Ruggs were assigned first to Daniel Davis and then to Jerome Skow, who spoke with the Ruggs regularly.  Complaint at ¶ 21.

The Ruggs allege that during these conversations they discussed changing the asset allocation in their accounts.  *Id.*  In May 2008, due to shoulder surgery and other physical problems, Mr. Rugg stopped working.  Complaint at ¶ 22.  He informed Mr. Skow of these new circumstances.  Complaint at ¶ 23.  The Ruggs allege that they contacted Mr. Skow to change the asset allocation in their account from 70% equities to 50% equities.  Complaint at ¶ 23.  SAI allegedly did not change the accounts' allocations.  Complaint at ¶ 24.  In November 2008, the Ruggs closed their managed accounts.  Complaint at ¶ 25.  They bring this suit alleging losses caused by Defendants' purported failure to change the allocations in their accounts.  Complaint at ¶ 27.

149959

## III.   ARGUMENT

### A.   Counts I, V, and VI Lack Facial Plausibility.

Counts I, V, and VI must be dismissed because they are not supported by factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) ("[a] claim has facial plausibility when *the plaintiff pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (emphasis added). Plaintiffs' allegations contain nothing more than vague suggestions that Plaintiffs believe Defendants may have violated some law. As a result, these counts must be dismissed, because the allegations must, but fail to, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As shown below, Plaintiffs are unable even to name specific laws providing them with a right to relief.

Plaintiffs' sparse and conclusory allegations in Counts I and V provide no basis for the Court reasonably to infer that Plaintiffs have stated a claim for "Rescission/Nullity" or gross negligence. *See* Complaint at ¶¶ 28 & 29, 35. Count VI, Plaintiffs' scattershot claim for "Breach of State and Federal Law", fares no better. Complaint at ¶ 36. Count VI claims a "breach of state and federal law including but not limited to the Louisiana Unfair Trade Practices Act, Louisiana Securities law, and the Investment Advisors (*sic*) Act of 1940." *Id*. This catch-all count impermissibly requires Defendants and the Court to parse through the Complaint to guess at what Plaintiffs are actually claiming. That is not proper pleading. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). Moreover, Plaintiffs' reference to the Louisiana Unfair Trade

149959

Practices Act ("LUTPA"), Louisiana Securities law, and the Investment Advisers Act of 1940 ("IAA") in Count VI does not save this claim because none of those statutes provides Plaintiffs with a basis for relief.

> **B.    Count I, Plaintiffs' Claim for "Rescission/Nullity", Must Be Dismissed Because Federal Law Preempts State Registration Requirements for Investment Advisers, and Plaintiffs Do Not Allege Any Defect in Formation of a Contract.**

Count I is seemingly an attempt to amalgamate two distinct claims to challenge the formation of a contract.  First, Plaintiffs erroneously allege that they are entitled to rescission of their contracts with SAI due to some alleged failure on SAI's part to be properly registered in Louisiana or to properly register its representatives.[1]  Complaint at ¶ 28.  Second, they add an allegation that SAI "failed to follow its own policies and protocols and the explicit instructions given by the Ruggs."  *Id.*  Neither of these allegations provides sufficient legal grounds for a claim of rescission.

In Count I, Plaintiffs allege that "the misrepresentations of Strategic Advisors, Inc. as to its and its Investment Adviser Representatives' registration status for the State of Louisiana . . . require a rescission [and]/or a declaration of nullity of the agreement between the parties."  Complaint at ¶ 28.  In so alleging, however, Plaintiffs misstate the law regarding the state registration requirements, and also misstate the facts.  Federal law expressly *preempts* state registration requirements and, therefore, SAI, as a federally-registered adviser, was not required

---

[1] Plaintiffs allege that SAI "held itself [out] as an Investment Advisor and its employees as Investment Advisor Representatives registered in the state of Louisiana."  Complaint at ¶ 13.  Plaintiffs then allege that "[u]pon information and belief, Strategic Advisers, Inc. and its Investment Advisor Representatives were not registered as a financial adviser or investment advisor representatives in the state of Louisiana."  Complaint at ¶ 26.

149959

to be registered with the State of Louisiana.[2]  As enacted by the National Securities Markets Improvement Act of 1996, Section 203A of the Investment Advisers Act preempts state registration requirements for advisers registered with the United States Securities and Exchange Commission ("SEC").  *See* 15 U.S.C. § 80b-3a(b)(1)(A) ("No law of any State or political subdivision thereof requiring the registration, licensing, or qualification as an investment adviser or supervised person of an investment adviser shall apply to any person" federally registered.).  As evident from the attached Form ADV, available publicly on the SEC's website, SAI has been federally registered since 1977 and, therefore, was registered pursuant to federal law at all times relevant to the Complaint.  *See* Registration Status page of Form ADV attached to Declaration of Meredith Cunningham at Ex. A (noting SEC registration approved 8/11/1977).[3]  Plaintiffs do not allege otherwise.

Just as the 1996 IAA amendments limited the scope of a state's authority to require registration of federally registered advisers, it also limited a state's authority to require the registration of the representatives who work for these advisers.  The IAA provides that "[n]o law of any State or political subdivision thereof requiring the registration, licensing, or qualification

---

[2] SAI has made notice filings to the state of Louisiana since October 2001 -- even though Louisiana did not enact a notice filing requirement until June 2008, years *after* Plaintiffs decided to invest through the PAS program according to their Complaint.  *See* Registration Status page of Form ADV attached to Declaration of Meredith Cunningham at Ex. A (noting notice filings made in Louisiana effective 10/17/2001).  *See also* La. R.S. § 51:703(D)(2) ("It shall be unlawful for any federal covered adviser to conduct advisory business in this state unless, prior to acting as a federal covered adviser in this state, such person files such documents as have been filed with the United States Securities and Exchange Commission with the [Louisiana Commissioner of Financial Institutions]."); La. Act No. 274 of 2008 (enacting La. R.S. § 51:703(D)(2)).

[3] The Court is "permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).  Forms ADV, including those for SAI and FMR, are publicly available on the SEC's website, at www.adviserinfo.sec.gov.  SAI's Form ADV can be accessed electronically via the SEC's website by searching the IARD/CRD Number 104555.  FMR's Form ADV can be accessed electronically by searching the IARD/CRD Number 108617.

as an investment adviser or supervised person of an investment adviser shall apply to any person . . . that is [federally] registered . . . as an investment adviser, or that is a supervised person of such person, except that a State may license, register, or otherwise qualify any investment adviser representative *who has a place of business within that State*." *See* 15 U.S.C. § 80b-3a(b)(1)(A) (emphasis added).    States may therefore only require the registration of representatives of federally registered advisers if they maintain a place of business in the state. Messrs. Gibson, Skow, and Davis did not maintain a place of business in Louisiana and the Plaintiffs make no allegations to the contrary. *See* Complaint at ¶ 1 (alleging that the individual defendants reside and work in Texas).[4]   There simply is no requirement that Messrs. Gibson, Davis, and Skow be registered in Louisiana as investment adviser representatives.

By virtue of Defendants' status as federally registered advisers and investment adviser representatives, they were permitted to conduct advisory business in Louisiana and all other states and, thus, any alleged representation by Defendants that they were registered to do advisory business in Louisiana would have been, in fact, correct.  Any allegation that Defendants were required to register separately as an adviser with the State of Louisiana fails as a matter of law.  Plaintiffs simply cannot bring a claim premised on alleged failure to register, and Count I must be dismissed for that reason.

Plaintiffs' other "grounds" for seeking to rescind/nullify their contract with SAI similarly are flawed.  Plaintiffs allege that they are entitled to rescission simply because SAI failed to

---

[4] Moreover, the same June 2008 amendment to the Louisiana Securities Act that required notice filings by federally registered advisers, for the first time, required the registration of investment adviser representatives. *See* La. R.S. § 51:703(D)(3) ("The procedure relative to the registration of a salesman, as provided for in Subsection C of this Section, shall also apply to the registration of an investment adviser representative."); La. Act No. 274 of 2008 (enacting La. R.S. § 51:703(D)(3)).  Before June 2008 there was no requirement that any investment advisor representative be registered with the state.

149959

follow its own policies and protocols. Rescission or nullity may be allowed, however, only when there was some defect in the formation of an agreement. *See, e.g.*, La. Civ. Code art. 2029 ("A contract is null when the requirements for its formation have not been met."); La. Civ. Code arts. 1921, 1964 (providing that duress or incapacity may be basis for rescission). Here, the Ruggs do not identify any specific agreement, and, more importantly, they have not identified any defect in the formation of the agreement. Indeed, the Complaint does not identify *any* particular contract, *any* contractual terms, or *any* basis to challenge formation. Rather, Plaintiffs make vague allegations regarding *performance* under the agreement -- that SAI "fail[ed] to follow its own policy and protocols and the explicit instructions given by the Ruggs" -- which is altogether different from a contract's *formation*. Complaint at ¶ 28. Even if the Ruggs provided greater detail into the nature of the policies and protocols, these allegations would still have no relevance to the agreement's formation, and, therefore, do not state a claim for rescission or nullity. This count of the Complaint should be dismissed.

### C. Count V for Gross Negligence Must Be Dismissed Because Plaintiffs Do Not Allege Willful, Wanton, and Reckless Conduct.

Plaintiffs allege that "Strategic Advisors, Inc.'s failure to follow its own protocols and investment guidelines and its clients' instructions . . . constitutes gross negligence which has caused plaintiffs' damages." Complaint at ¶ 35. This count is apparently based on allegations that the Ruggs contacted SAI employees to request that their portfolios' 70% stock allocation be reduced, and that such requests "remained unanswered." Complaint at ¶¶ 21 & 23. The Complaint, however, contains no allegations even approaching gross negligence.

Under Louisiana law, "gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence." *Houston Exploration v. Halliburton Energy Serv.*, 269 F.3d 528, 531 (5th Cir. 2001). In other words, "one is grossly negligent when

149959

he 'has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Id.* at 532 (quoting *State v. Vinzant*, 200 La. 301, 315 (1942)). Nowhere do Plaintiffs allege willful, wanton, and reckless conduct, or any intentional act.

Plaintiffs essentially allege that they contacted SAI employees and did not hear back, or that SAI did not act upon Plaintiffs' requests. These allegations do not amount to gross negligence any more than they amount to "[m]ere inadvertence or honest mistake [which] does not amount to gross negligence." *Houston Exploration*, 269 F.3d at 531. The Supreme Court has made clear that such thin allegations are insufficient to state a claim; Plaintiffs' gross negligence claim lacks "facial plausibility" because Plaintiffs fail to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plaintiffs' allegations are no more susceptible to an inference of inadvertence or honest mistake (if that) than they are to an inference of gross negligence, and they therefore fail to plead a gross negligence claim.

Indeed, any suggestion that the 70% equities allocation in the Ruggs' portfolios was a risk "so great as to make it highly probable that harm would follow" (*Houston Exploration*, 269 F.3d at 532) presupposes insight into the future performance of the securities markets, which Plaintiffs have not and cannot allege that SAI possessed. The Ruggs' portfolios, like any portfolio holding equities, always faced the *possibility* of decline in the market, but they also faced the possibility of great gains. Nowhere do the Ruggs allege that SAI should have viewed the equity percentage in the Ruggs portfolios as presenting a risk of *probable* harm -- but that is what a gross negligence claim requires. Courts recognize that "[t]he market has risks; the

securities laws do not serve as investment insurance." *Raab v. General Physics Corp.*, 4 F.3d 286, 291 (4th Cir. 1993) (affirming dismissal of federal securities fraud claims).  Likewise, an unsupported claim for gross negligence cannot serve as investment insurance:  All reasonable investors realize that stock market losses are possible, but they continue to invest because they do not view the potential for losses as probable.  Plaintiffs do not, and cannot, claim that SAI uniquely viewed stock market losses as probable.  Count V for Gross Negligence must therefore be dismissed.

>    **D.  Count VI, Plaintiffs' Shotgun Claim of "Breach of State and Federal Law" Must Be Dismissed for Failure to Plead Specific Counts, and Plaintiffs Cannot State a Claim for Any of the Laws Mentioned in this "Count".**

As noted above, Plaintiffs' catch-all Count VI, for "Breach of State and Federal Law" is an improper attempt at a placeholder for any claim under the sun.  The most basic rules of pleading require Plaintiffs to state an alleged violation of law and allege supporting facts. Under Rule 8(a)(2), Plaintiffs must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 10(b) requires claims to be stated in separate numbered paragraphs.  Fed. R. Civ. P. 10(b).  *See also Twombly*, 550 U.S. at 555 (Rule "8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to '*give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.*'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (emphasis added).  Count VI gives SAI no notice of claims purportedly brought against it -- instead, the count invites the Court to throw open the entirety of the United States Code and the Louisiana Revised Statutes to try to discern which of their provisions the Ruggs might at trial allege were violated.  Count VI must be dismissed because it presents no count at all.

Should the Court decline to dismiss Count VI pursuant to Rule 12(b)(6), Defendants alternatively move for a more definite statement pursuant to Rule 12(e).  *See* Fed. R. Civ. P.

149959

12(e) ("A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response."). The vague claim for "Breach of State and Federal Law" provides no basis for a response or assertion of defenses. If the Court does not dismiss the count, Plaintiffs should be ordered to state specific counts arising from specific statutory provisions. *See Sargent v. Riley*, No. 02-1857, 2003 WL 30418, at *4 (E.D. La. Jan. 3, 2003) (granting motion for more definite statement where "it [was] impossible to discern with any degree of certainty exactly what claims plaintiffs mean[t] to assert").

Further, the laws that Plaintiffs do refer to, seemingly by way of example, do not entitle Plaintiffs to any relief. Therefore, as described below, the Court should rule that Plaintiffs cannot state a claim for violation of the Louisiana Unfair Trade Practices Act, the Louisiana Securities Law, or the Investment Advisers Act.

### 1. Plaintiffs Cannot State a Claim for Violation of LUTPA Because LUTPA Claims Are Precluded in the Securities Context.

Alleged violations of the securities laws cannot form the basis for a LUTPA claim. *Stephenson v. Paine Webber Jackson & Curtis*, 839 F.2d 1095, 1101 (5th Cir.), *cert denied*, 488 U.S. 926, 109 S.Ct. 310 (U.S. La. 1988) (noting LUTPA is interpreted in accord with the Federal Trade Commission Act, which "has been interpreted to *preclude* coverage of securities claims") (emphasis added). As the Fifth Circuit has noted, Louisiana's Consumer Protection Agency enforces LUTPA, while the state banking commissioner (now the Commissioner of Financial Institutions) enforces Louisiana's securities laws. *Id. See also Taylor v. First Jersey Sec.*, 533 So.2d 1383, 1387-88 (4th Cir.), *writ denied*, 538 So.2d 594 (La. 1989) (same). As the conduct at issue in the Complaint is not overseen by the Consumer Protection Agency, its statute does not apply to this conduct.

149959

Plaintiffs' entire Complaint is premised on alleged misrepresentations regarding investment adviser registration in Louisiana and alleged failure to reallocate Plaintiffs' investment portfolio.   Complaint at ¶¶ 13, 16, 19, 21, 23, 26.   The Commissioner of Financial Institutions has authority over the registration and oversight of investment advisers.   *See* La. R.S. §§ 51:702(3); 51:710(A)(1) ("The administration of the provisions of this Part shall be vested in the commissioner of financial institutions, who is designated commissioner of securities."). Plaintiffs are therefore precluded from bringing a LUTPA claim.   *Stephenson*, 839 F.2d at 1101. This "count" must therefore be dismissed with prejudice.

### 2.  Plaintiffs Cannot State a Louisiana Securities Law Claim Because They Do Not Plead A Knowing Misrepresentation.

To state a claim for violation of the Louisiana Securities Law, a plaintiff must show that a defendant made a misrepresentation or omission and "the defendant knew, or in the exercise of reasonable diligence, could have known, of the untruth or omission."   *See Ponthier v. Manalla*, 951 So.2d 1242, 1255 (La. App. 5th Cir. 2007) (quoting *Taylor,* 533 So.2d at 1386).   Plaintiffs simply fail to allege that any defendant knowingly made any misrepresentation or omission. As described above regarding Count I, Plaintiffs do not allege any misrepresentation regarding registration status, because Plaintiffs cannot allege a requirement to register in Louisiana.

Further, the misrepresentations alleged by Plaintiffs sound in fraud, but the allegations come *nowhere close* to meeting the heightened pleading requirement of Rule 9(b).   *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake.") (emphasis added).   In this Circuit, courts "interpret[] Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."   *Flaherty & Crumine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207

(5th Cir.), *cert. denied*, 130 S.Ct. 199 (U.S. 2009). A plaintiff bringing a Louisiana Securities Law claim must plead facts with particularity if the allegations sound in fraud. *See In re Merrill Lynch Investment Mgmt. Funds*, 434 F. Supp. 2d 233, 239 (S.D.N.Y. 2006) (Rule 9(b) applies to federal claim under Section 12(a)(2) of the Securities Act of 1933 where "allegations clearly are of fraud, not negligence"); *Taylor*, 533 So.2d at 1385 (Louisiana Securities Law analogous to Section 12(a)(2) of the Securities Act of 1933 and reliance upon federal law on that section is appropriate). Here, Plaintiffs allege that SAI misrepresented "itself as an Investment Advisor and its employees as Investment Advisor Representatives in the state of Louisiana." Complaint at ¶¶ 13 & 28. Despite alleging fraudulent misrepresentation regarding registration status, *nowhere* in the Complaint do Plaintiffs "identify the speaker, state when and where the statements were made, [nor] explain why the statements were fraudulent." *Flaherty*, 565 F.3d at 207.

Nor does this Count point to any other misrepresentation or omission knowingly made by any defendant. Instead, Plaintiffs place the burden on Defendants and the Court to "sort out the alleged misrepresentations and then match them with the corresponding adverse facts." *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005). That "method is deficient under the pleading standards." *Id.* Parsing through the allegations in the Complaint, the only other allegation that resembles a claim of misrepresentation is that SAI and "Fidelity" "literature expressly and unequivocally made representations and recommendations concerning stock allocations for those persons approaching retirement, promised regular portfolio review and adjustments, and guaranteed that defendants would be responsive to client requests and changes in financial conditions" and that "stock allocations would be reduced as a client neared retirement." Complaint at ¶¶ 10 & 12. Plaintiffs do not, however, allege that any defendant

149959

*knowingly* misrepresented that Plaintiffs' portfolios would be reviewed or adjusted regularly.  No allegation in the Complaint would allow the Court to draw a reasonable inference that any defendant knowingly made any misrepresentation. *See Iqbal*, 129 S. Ct. at 1949 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Plaintiffs therefore cannot state a Louisiana Securities Law claim.

Even crediting Plaintiffs' allegation that marketing literature represented that SAI "would be responsive to client requests and changes in financial conditions" (Complaint at ¶ 10), Plaintiffs do not allege that SAI *knew* that representation to be false.  As discussed above, regarding Plaintiffs' claim of Gross Negligence, any allegation of "unanswered" requests to change stock allocation "[a]s a result of [Mr. Rugg's] changing physical condition" is no more susceptible to an inference of knowing misrepresentation than to inadvertence or honest mistake.  Plaintiffs simply do not plead any misrepresentation, and this count must be dismissed.

### 3.    Plaintiffs Cannot State a Claim for a Violation of the Investment Advisers Act Because the Act Does Not Provide for a Private Right of Action.

Plaintiffs do not specify an alleged violation of any particular section of the IAA. Complaint at ¶ 35.  That said, the *only* private right of action under the IAA is for an alleged violation of Section 215, 15 U.S.C. § 80b-15, which provides for voiding advisory contracts that violate the IAA itself.  *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979) ("there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisers contract, but that the Act confers *no other private causes of action*, legal or equitable") (emphasis added).  To succeed on a claim under Section 215, the Ruggs must

149959

show either that a contract they entered violates the IAA or that SAI violated the IAA in its performance of the contract.

Plaintiffs' Complaint fails to state a claim under the IAA. Plaintiffs do not even specifically allege that they entered into a contract with SAI. To the extent their allegations suggest that some agreement existed (*see, e.g.*, Complaint at ¶ 11 "Portfolio Reviews were represented to take place at least once a year"), they provide no description of the agreement's terms, nor do they give Defendants notice as to which section(s) of the IAA they believe were violated by the agreement's terms. Similarly, there is not a single allegation in the Complaint alleging that, in their performance of the (presumed) agreement, any of the defendants violated the IAA, nor is there any allegation as to which provisions of the IAA may have been violated. The IAA, moreover, does not contain any provisions that make breaching an agreement between a customer and an advisor a violation of the Act. Merely alleging that SAI did not meet its obligations does not form the basis for a claim under IAA section 215. Plaintiffs have not stated a claim for relief under the IAA, and this count must therefore be dismissed.

### E.     FMR Co., Inc. and the Individual Defendants Are Not Proper Parties and Should Be Dismissed From the Suit.

As shown below, Plaintiffs improperly name FMR Co., Inc., Matthew Gibson, Dan Davis, and Jerome Skow as defendants, and each should be dismissed from this suit.

### 1.     FMR Co., Inc. Is An Adviser to Fidelity Mutual Funds and Could Not Have Had Any Relationship with Plaintiffs.

Plaintiffs' allegations regarding FMR are simply incorrect. Plaintiffs allege that FMR is a brokerage or adviser and that it is "closely aligned" with SAI. Complaint at ¶ 7. Plaintiffs fail to allege any facts that support the existence of an investment advisory relationship, or any relationship, between them and FMR. The Complaint does not contain a single allegation regarding contact with anyone employed by FMR. They do not allege that they opened any

accounts with FMR or that they entered into any contract with it.  Moreover, FMR does not provide advisory services to individuals like the Ruggs.  FMR is the adviser to the Fidelity family of mutual funds, and has *no* individuals as clients.  As a federally registered adviser, FMR is required to file with the Securities and Exchange Commission a Form ADV.  On the ADV, in Item 5, Section D, advisers disclose the nature of the advisory relationships they have.  FMR's Form ADV discloses that it has no clients who are individuals.  *See* Form ADV attached to Declaration of Meredith Cunningham at Ex. B (disclosing that FMR has no individual clients) (page 7 of attached Internet printout).  Counts III (Detrimental Reliance) and VI (Breach of State and Federal Law) are the only counts of the Complaint that specifically mention FMR.  As demonstrated above, since there was no relationship between Plaintiffs and FMR these claims should be dismissed.  As FMR is not named in any of the remaining claims, FMR should be dismissed from this action.[5]

### 2.      No Count Names the Individual Defendants.

The counts of the Complaint simply do not name Messrs. Gibson, Davis, or Skow.  *See* Complaint at ¶¶ 28-36.  Plaintiffs do not allege a violation of any law by these individuals, and name them as defendants despite only including them in the Complaint's factual allegations. With respect to these defendants, the Complaint does not meet the pleading requirements in Fed. R. Civ. P. 8(a).  The Complaint lacks any claims showing that Plaintiffs are entitled to relief against these defendants.  Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief *must*

---

[5] FMR is not named in Count I (Rescission/Nullity), Count II (Breach of Contract), Count IV (Breach of Fiduciary Duty), and Count V (Gross Negligence).  To the extent Plaintiffs assert that they intended to do so, the pleading as to FMR is completely deficient.

149959

contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") (emphasis added).

Where a Complaint fails to include individual defendants in any claim, there can be no doubt that the Complaint "fails to state a claim" as to those individual defendants and it must be dismissed. *See, e.g., Alfaro Motors. Inc. v. Ward*, 814 F.2d 883, 883 (2d Cir. 1987) (affirmed that as to police commissioner and sergeant defendants, complaint was properly dismissed as "fatally defective on its face" where complaint failed to allege that those defendants were "personally responsible for the purported unlawful conduct"); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (affirming the dismissal of individual officers on a motion to dismiss plaintiff's § 1983 claims where plaintiff failed to plead personal involvement in constitutional violation by individual defendants); *Massachusetts School of Law v. American Bar*, 853 F. Supp. 843 (E.D. Pa.), *aff'd*, 107 F.3d 1026 (3rd Cir.), *cert. denied*, 522 U.S. 907 (U.S. 1997) (important reason for affirming dismissal of complaint against individual defendants was that "[p]laintiff has not alleged in its complaint nor asserted in its arguments, a legal theory upon which the liability of any individual can rest); *Kirkland v. Bianco*, 595 F. Supp. 797, 799-800 (S.D.N.Y. 1984) (dismissing individual defendants from complaint where complaint provided no basis to ascertain how defendants violated the law in some manner as to injure plaintiff.).  Here, this defect calls for dismissal of the Complaint as to Messrs. Gibson, Davis, and Skow.

## IV.   CONCLUSION

Defendants respectfully request that Counts I, V, and VI of the Complaint be dismissed, and that FMR and Messrs. Gibson, Davis, and Skow be dismissed from the action altogether. Plaintiffs' Rescission/Nullity claim must be dismissed because it is premised on the incorrect assertion that Defendants were not properly registered.  Plaintiffs otherwise do not allege a defect in the formation of any contract that could support a rescission or nullity claim.  Plaintiffs'

17

149959

Gross Negligence claim fails because nowhere in the allegations do Plaintiffs suggest willful, wanton, and reckless conduct or anything approaching an intentional act of unreasonable character.  Plaintiffs' catch-all count for "Breach of State and Federal Law" must be dismissed because Plaintiffs fail to specify any particular legal violation, and the Court should rule that Plaintiffs cannot state a claim under LUTPA, the Louisiana Securities Law, or the Investment Advisers Act.  In the alternative, the Court should order Plaintiffs to replead Count VI pursuant to Rule 12(e).  Finally, the Court should dismiss FMR from the Complaint because Plaintiffs do not – and, as individual retail investors, could not -- allege any relationship with FMR. Messrs. Gibson, Davis, and Skow should also be completely dismissed from the action because Plaintiffs do not bring any of the Complaint's counts against any of them.

Respectfully submitted,

_/s/ Meredith A. Cunningham_
George C. Freeman, III, 14272, T.A.
Meredith A. Cunningham, 26465
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:     (504) 589-9700
Facsimile:     (504) 589-9701

_Counsel for Defendants FMR Co., Inc.,_
_Strategic Advisers, Inc., Matthew Gibson,_
_Dan Davis, and Jerome Skow_

_Of Counsel_:

David C. Boch
Michael R. Weissmann
Michael C. Moran
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726
Telephone:     (617) 951-8000

18

149959

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the plaintiffs' counsel by electronic mail, court's electronic system, and/or placing same in the United States Mail, postage prepaid and properly addressed this 30th day of December, 2009.

*/s/ Meredith A. Cunningham*

149959