# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

STEPHEN H. RUGG and PATRICIA A. RUGG,

          Plaintiffs,

VERSUS

DAN DAVIS, MATTHEW DAVID GIBSON, JEROME
RICHARD SKOW, STRATEGIC ADVISERS, INC.,
FIDELITY BROKERAGE SERVICES, LLC, and FMR,
L.L.C.

          Defendants.

CIVIL ACTION NO.  09-1952

JUDGE JAMES

MAGISTRATE JUDGE HAYES

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS I, V, VI, AND VII
OF PLAINTIFFS' SUPPLEMENTAL, AMENDING, AND RESTATED PETITION FOR
DAMAGES, AND TO DISMISS FIDELITY BROKERAGE SERVICES LLC, FMR LLC,
MATTHEW GIBSON, DAN DAVIS, AND JEROME SKOW AS DEFENDANTS**

George C. Freeman, III, 14272, T.A.
Meredith A. Cunningham, 26465
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Fax:    (504) 589-9701

David C. Boch (*pro hac vice*)
Michael R. Weissmann (*pro hac vice*)
Michael C. Moran (*pro hac vice*)
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Fax:    (617) 951-8736

*Counsel for Defendants Dan Davis,
Matthew David Gibson, Jerome Richard
Skow, Strategic Advisers, Inc., Fidelity
Brokerage Services LLC, and FMR LLC*

155524

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................3

        A.      The Parties ...............................................................................................3

        B.      Plaintiffs' Allegations .............................................................................3

III.    ARGUMENT ........................................................................................................5

        A.      Counts I, V, VI, and VII Lack Facial Plausibility ...................................5

        B.      Count I, Plaintiffs' Claim For "Rescission/Nullity", Must Be Dismissed Because
                Plaintiffs Do Not Allege Any Defect In Formation Of A Contract And Federal
                Law Preempts State Registration Requirements For Investment Advisers .............5

                1.      Plaintiffs' Claim That Representations Regarding The
                        Individual Defendants' Registration In Louisiana Renders The
                        Agreement With SAI Null Is Without Merit. ...............................................6

                2.      Plaintiffs Cannot Seek Rescission Or Nullity Based On Alleged
                        Failure To Execute Services ........................................................................9

                3.      Plaintiffs Have Not Alleged A Violation Of The Investment Advisers
                        Act Giving Rise To Rescission Or Nullity. ...............................................13

        C.      Count V For Negligence/Gross Negligence Must Be Dismissed Because
                Plaintiffs Do Not Allege Willful, Wanton, And Reckless Conduct. ....................17

        D.      Count VI, For "Breach Of State Law" Must Be Dismissed Because Mr. Skow
                Was Not Required To Separately Register In Louisiana. .......................................19

        E.      Count VII Must Be Dismissed Because FBS And FMR Are Not Proper Parties
                And Should Be Entirely Dismissed From The Suit. ..............................................20

        F.      The Individual Defendants Are Not Responsible For The Alleged Actions Or
                Omissions Of Their Employers, And Should Be Dismissed From The Suit
                Entirely....................................................................................................................22

IV.     CONCLUSION.....................................................................................................23

CERTIFICATE OF SERVICE ...............................................................................................25

155524

## TABLE OF AUTHORITIES

### CASES

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ................................................................ 16

*Albert v. Alex Brown Mgmt. Servs., Inc.*,
  2005 WL 2130607 (Del.Ch.) ................................................................ 26

*Ashcroft v. Iqbal*,
  ____ U.S. ____, 129 S. Ct. 1937 (2009) ................................ 5, 18, 21

*Barrett Assoc., Inc. v. Aronson*,
  346 Mass. 150 (1963) ........................................................................ 11

*BASF Corporation v. POSM II Properties Part.*,
  3608-VCS (Del.Ch. 3-3-2009) ............................................................ 26

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 5

*Birbara v. Locke*,
  99 F.3d 1233 (1st Cir. 1996) .............................................................. 25

*Bossier Marble v. Kelly's Truck Term*,
  530 So. 2d 1198 (La. App. 2 Cir.), *writ denied*, 532 So. 2d 133 (La. 1988) ...................... 14

*Bujol v. Entergy Servs., Inc.*,
  922 So. 2d 113 (La. 2006) .................................................................. 24

*Carroll v. Bear Sterns & Co.*,
  416 F. Supp 998 (S.D.N.Y. 1976) ............................................... 15, 16

*Christopher v. Father's Huddle*,
  782 N.E.2d 517 (2003) ........................................................................ 20

*Commerce Bank & Trust v. Hayeck*,
  46 Mass. App. Ct. 687 (1999) ............................................................ 11

*Davis v. Bayless*,
  70 F.3d 367 (5th Cir. 1995) .................................................................. 8

*Dennis v. Copelin*,
  669 So. 2d 556 (La. App. 4th Cir.), *writ denied*, 675 So. 2d 1079 (La. 1996) .................... 26

*Dorn v. Astra USA*,
  975 F. Supp. 388 (D. Mass. 1997) ...................................................... 13

*Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc.,*
831 F. Supp. 920 (D. MA. 1993) ........................................................................... 12, 14

*Federal Sav. and Loan Ins. Corp. v. Shearson-Am. Exp., Inc.,*
658 F. Supp. 1331) (D. P.R. 1987) ........................................................................... 15

*Gasden v. Home Pres. Co., Inc.,*
Civ.A. 18888 (Del.Ch. Feb. 20, 2008) .................................................................... 26

*Green v. Champion Ins. Co.,*
577 So. 2d 249 (La. App. 1st Cir. 1991) ................................................................. 24

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.,*
302 F.3d 552 (5th Cir. 2002) ................................................................................... 16

*Hills v. Chambers,*
No. 96-0072B (Ma. Super. Aug. 18, 2000) ............................................................ 14

*Houston Exploration v. Halliburton Energy Serv.,*
269 F.3d 528 (5th Cir. 2001) ......................................................................... 19, 20, 21

*In re Ark-La-Tex Timber,*
482 F.3d 319 (5th Cir. 2007) ................................................................................... 25

*In re Boston Shipyard Corp.,*
886 F.2d 451 (1st. Cir. 1989) ................................................................................... 13

*Korson v. Independence Mall I, Ltd.,*
595 So. 2d 1174 (La. App. 5th Cir. 1992) ............................................................... 27

*Marty v. Mid-America,*
74 Mass. App. Ct. 25 (2009) ...................................................................................... 7

*McEvoy Travel Bureau, Inc. v. Norton Co.,*
408 Mass. 704 (1990) ............................................................................................... 11

*McGrath v. C.T. Sherer* Co.,
291 Mass. 35 (1935) ................................................................................................. 12

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
Civ.A. 19760-NC (Del.Ch. Mar. 4, 2004) ............................................................. 26

*Melder v. Morris,*
27 F.3d 1097 (5th Cir. 1994) ................................................................................... 16

*Pauley Petroleum Inc. v. Cont'l Oil Co.,*
239 A.2d 629 (Del. 1968) ........................................................................................ 26

155524

*Pinero v. Jackson Hewitt, Inc.*,
   No. Civ. A. 08-3535 (E.D. La. Apr. 21, 2009) ..................................................... 22

*Raab v. General Physics Corp.*,
   4 F.3d 286 (4th Cir. 1993) ................................................................................... 16, 21

*Rabalais v. Nash*,
   952 So.2d 653 (La. 2007) ........................................................................................ 20

*Scott v. NG US 1*,
   450 Mass. 760 (2008) .............................................................................................. 25

*Shaw's Supermarkets, Inc. v. Delgiacco*,
   410 Mass. 840 (1991) .............................................................................................. 12

*Solomon v. Birger*,
   19 Mass. App. Ct. 634 *rev. denied*, 395 Mass. 1103 (Mass. 1985) ...................... 13

*State v. Vinzant*,
   200 La. 301 (1942) .................................................................................................. 20

*Thomas v. State Employees Group Benefits Program*,
   934 So.2d 753 (La. App. 1st Cir. 2006) ................................................................. 22

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*,
   444 U.S. 11 (1979) .................................................................................................. 15

## OTHER AUTHORITIES

15 U.S.C. § 80b-3a(b)(1)(A) ........................................................................... 8, 9, 23

15 U.S.C. § 80b-6 ................................................................................................... 19

17 C.F.R. § 275.206(4)-1(3) ................................................................................... 18

17 C.F.R. § 275.206(4)-4(a) ................................................................................... 19

7 A. Corbin, *Contracts* § 28.8 (rev. ed. 2002) ...................................................... 14

Fed. R. Civ. P. 9(b) ................................................................................................. 16

Jeremy J. Siegel,
   *Stocks for the Long Run* 36 (McGraw Hill 2002) ................................................. 18

La. Act No. 274 of 2008 .......................................................................................... 22

La. Civ. Code art. 1921 ........................................................................................... 10

La. Civ. Code art. 1948 ....................................................................................... 7, 10

155524

La. Civ. Code art. 1964 ........................................................................................... 10

La. Civ. Code art. 2029 ...................................................................................... 7, 10

La. R.S. § 51:703(D)(2) .............................................................................................. 8

La. R.S. § 51:703(D)(3) .............................................................................................. 9

LSA-C.C. art. 1843 ................................................................................................... 14

Thomas S.Y. Ho & San Bin Lee,
  *The Oxford Guide to Financial Modeling: Applications for Capital Markets*
  (Oxford Univ. Press 2004) ................................................................................. 17

155524

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN H. RUGG and PATRICIA A. RUGG, <br><br> Plaintiffs, <br><br> VERSUS <br><br> DAN DAVIS, MATTHEW DAVID GIBSON, JEROME RICHARD SKOW, STRATEGIC ADVISERS, INC., FIDELITY BROKERAGE SERVICES, LLC, and FMR, L.L.C. <br><br> Defendants. | CIVIL ACTION NO.  09-1952 <br><br> JUDGE JAMES <br><br> MAGISTRATE JUDGE HAYES |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS I, V, VI, AND VII
OF PLAINTIFFS' SUPPLEMENTAL, AMENDING, AND RESTATED PETITION FOR
DAMAGES, AND TO DISMISS FIDELITY BROKERAGE SERVICES LLC, FMR LLC,
MATTHEW GIBSON, DAN DAVIS, AND JEROME SKOW AS DEFENDANTS

I.    INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Dan Davis, Matthew David Gibson, Jerome Richard Skow, Strategic Advisers, Inc. ("SAI"), Fidelity Brokerage Services LLC ("FBS"), and FMR LLC ("FMR") submit this Memorandum of Law in Support of their Motion to Dismiss. SAI moves to dismiss Counts I, V, VI, and VII of Plaintiffs' Supplemental, Amending, and Restated Petition for Damages ("Amended Complaint" or "AC"), with prejudice. SAI is separately filing an Answer to Counts II, III, and IV of the Amended Complaint. FBS, FMR, and Messrs. Davis, Gibson, and Skow join in SAI's motion to dismiss Counts I, V, VI, and VII, and separately move to dismiss this action as against them in its entirety.  FBS and Mr. Gibson also move separately to compel arbitration and to stay this proceeding pending resolution of the arbitration.

1

155524

Although conceding the myriad flaws in their initial complaint including the lack of any basis for asserting a claim under the Louisiana Unfair Trade Practices Act or for naming FMR Co., Inc. as a defendant, *see* Oppositions to Motion to Dismiss and, in the Alternative, for a More Definitive [*sic*] Answer [*sic*] at 1 (Docket Entry No. 22), Plaintiffs, in their Amended Complaint, continue to press claims that have no merit and to name defendants that have no involvement in the facts alleged.

Plaintiffs' Amended Complaint continues to lack facial plausibility.  Moreover, Plaintiffs seek to rescind their investment advisory agreement (the "Agreement") based largely on the erroneous assertion that defendants SAI, Mr. Davis, and Mr. Skow were not registered to provide advisory services in Louisiana. Plaintiffs wholly ignore the law cited in Defendants' motion to dismiss the original complaint that makes clear that SAI, Mr. Davis, and Mr. Skow *were* properly registered to do business in Louisiana by virtue of their affiliation with a federally registered adviser, SAI. Moreover, this Count fails to allege a defect in the formation of the contract or any viable violation of the Investment Advisers Act.  Count VI for "Breach of State Law" is likewise flawed as the registration Plaintiffs contend did not exist, in fact, did exist. Plaintiffs cannot be allowed to ignore the federal *preemption* of state registration requirements for investment adviser representatives.

Plaintiffs also assert an unfounded gross negligence claim by alleging that Defendants had "certain knowledge" that a high stock allocation "would result in damages." But Plaintiffs do not, and cannot, allege that Defendants knew that, in 2008, the market would experience unprecedented losses that universally surprised investors.

Plaintiffs' claims against FBS and FMR should be dismissed, as well, as neither is a proper party to the suit.  The same is true for the individual defendants, as they cannot be held

personally liable for the actions claimed in the Amended Complaint. For all of these reasons and, as discussed further below, Defendants' Motion to Dismiss should be granted, with prejudice.

## II.   BACKGROUND

### A.   The Parties.

Plaintiffs are husband and wife and both are allegedly sophisticated investors with "significant investments and retirement portfolios," AC at ¶¶ 15 & 16. The Amended Complaint alleges that "FMR is a foreign holding company which wholly owns defendants SAI and FBS, as well as other entities. AC at ¶ 2. Plaintiffs further allege that "SAI provides investment advisory services to individuals," AC at ¶ 3, and that both FBS and SAI employed Messrs. Gibson, Skow, and Davis. AC at ¶¶ 7, 8, 11, 12, 13, 14.

### B.   Plaintiffs' Allegations.

The theme of the Amended Complaint is that, despite an alleged promise to do so, SAI and its employees did not annually re-adjust the Ruggs' portfolio of mutual funds as the Ruggs neared retirement. With the luxury of hindsight, the Ruggs now seek to avoid the investment losses they incurred due to the stock market's catastrophic decline between September 2008 and November 2008. The Amended Complaint erroneously claims that SAI and its employees are somehow liable to the Ruggs for their losses: had SAI re-adjusted the Ruggs' portfolio annually, the Ruggs allegedly would not have lost as much as they did. SAI denies that it violated any duty to the Ruggs and denies that it is liable in any way for the Ruggs' investment losses.

The Amended Complaint alleges that, in early 2001, the Ruggs spoke with Mr. Gibson and others who assisted them in opening three investment advisory accounts managed by SAI: a joint account and two individual retirement accounts ("IRAs"). AC at ¶¶ 21 & 31. By way of background, SAI is a federally registered investment adviser that manages customer accounts

through a program called Portfolio Advisory Services ("PAS"). AC at ¶¶ 24 & 31. A customer interested in opening a PAS account completes an Investor Profile Questionnaire ("IPQ"). AC at ¶ 39. SAI uses the IPQ to collect information about the customer, including age, planned investment time horizon, financial situation, and risk tolerance. AC at ¶¶ 27 & 39. SAI analyzes the information collected in the IPQ and determines which of several targeted mutual fund portfolio strategies best match the customer's investment goals, time horizon and risk tolerance. After identifying the appropriate portfolio, based upon the information the customer supplies, SAI prepares a proposal and presents it to the customer. Once the customer reviews the proposal, he or she can either accept it, reject it, or revise the information in the IPQ and ask that a new proposal be presented based upon an updated analysis. When a customer opens a PAS account, the account agreement vests discretion in SAI investment managers to select mutual fund investments consistent with the client-accepted portfolio strategy. Once an account is opened, each customer is assigned to a relationship officer who serves as the customer's contact person. A customer may call the assigned relationship officer at any time to ask questions or obtain further information. AC at ¶ 26. On an annual basis, the relationship officer reviews the account's performance and reviews -- and makes any necessary updates to -- the customer's information then on file. AC at ¶ 29.

At the time they opened their accounts, the Ruggs completed a questionnaire, in which they provided SAI with information regarding their ages, expected retirement dates, and investment objectives. AC at ¶ 27. After opening their SAI accounts, Daniel Davis and then Jerome Skow was assigned as the Rugg's' relationship officer.

The Ruggs allege that they discussed changing the asset allocation in their accounts during certain unspecified conversations. AC at ¶¶ 43 & 44. In May 2008, due to health

155524

problems, Mr. Rugg stopped working. AC at ¶ 44.   He informed Mr. Skow of these new circumstances. *Id.* The Ruggs allege that Defendants never changed the allocation in the Ruggs' PAS accounts. AC at ¶ 44.  In November 2008, the Ruggs closed their managed accounts. AC at ¶ 42. They bring this suit alleging losses caused by Defendants' purported failure to change the allocations in their accounts. AC at ¶ 27.

## III.   ARGUMENT

### A.   Counts I, V, VI, and VII Lack Facial Plausibility.

Counts I, V, VI, and VII must be dismissed because they are not supported by factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1937, 1949 (2009) ("[a] claim has facial plausibility when *the plaintiff pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (emphasis added). Plaintiffs' allegations contain nothing more than vague suggestions that Plaintiffs believe Defendants may have violated some law or contract. As a result, these counts must be dismissed, because the allegations must, but fail to, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.   Count I, Plaintiffs' Claim For "Rescission/Nullity", Must Be Dismissed Because Plaintiffs Do Not Allege Any Defect In Formation Of A Contract And Federal Law Preempts State Registration Requirements For Investment Advisers.

Count I, for "Rescission/Nullity", is apparently based on three theories -- none of which provides Plaintiffs with a right to relief.  Plaintiffs first allege violations of La. Civ. Code art. 1948, *et seq.*, and La. Civ. Code art. 2020, *et seq.*  AC at ¶ 42.  Plaintiffs then attempt to claim rescission/nullity based on the allegation that Defendants failed to *execute* services allegedly promised to Plaintiffs. AC at ¶ 54.  However, an alleged failure to *perform* provides no basis to

rescind or nullify an agreement -- at best, it provides a claim for breach of contract, which Plaintiffs separately claim. Finally, Plaintiffs attempt to claim that violations of the Investment Advisers Act ("IAA") form a basis for rescission or nullity, but they fail to adequately plead any violation of that Act. AC at ¶¶ 57-61.

> **1.** **Plaintiffs' Claim That Representations Regarding The Individual Defendants' Registration In Louisiana Renders The Agreement With SAI Null Is Without Merit.**

At the outset, Massachusetts law, and not Louisiana law, applies here as Plaintiffs agreed in the contract that Massachusetts law governed these claims. Indeed, Plaintiffs admit they entered into this contract with SAI. Louisiana. Civ. Code Art. 3540 expressly allows for parties to agree to choice of law provision in contracts, and that is what they have done here. As discussed below, under Massachusetts law, Plaintiffs cannot seek rescission or nullity based upon a failure to execute contractual services; nor does Louisiana law permit such a claim.[1] *See infra* 9-12.

Under either law, Plaintiffs fail to allege a claim based on their allegation that they "were in error as to the status and abilities of SAI to perform the represented services in Louisiana" and that "the agreements between the parties are null under state law . . . as, . . . Defendants violated

---

[1] The Agreement contains a Massachusetts choice of law provision. The Ruggs cannot be allowed to attempt to rescind, or in the alternative, hold SAI to the Agreement's terms, while disregarding the Massachusetts choice of law provision that the Agreement contains. Attached to the Affidavit of Scott C. Kleekamp, *Exhibit 1*, ("Kleekamp Affidavit") as **Exhibit A** is the Fidelity FundsManager Program Customer Agreement for PAS that Plaintiffs allege is controlling. The choice of law provision contained in that agreement states: "The Agreement will be governed by the internal laws of the Commonwealth of Massachusetts. . . ." *Ex. 1*, Kleekamp Affidavit, **Exhibit A.** In an abundance of caution, SAI will nonetheless address the Louisiana law-based claims in this motion. The substantive law and pleading standards under the law of either jurisdiction are sufficiently similar that regardless of whether the Court applies Massachusetts or Louisiana law, the Amended Complaint fails to state a claim and must be dismissed. Additionally, even where there are general allegations of fraud in the inducement as to a contract, Massachusetts courts will still honor a choice of law provision in the disputed contract, unless there are specific allegations that the choice of law provision was induced by fraud. *See, e.g., Marty v. Mid-America*, 74 Mass. App. Ct. 25 (2009) (affirming dismissal of complaint on the basis of a forum-selection clause contained in the agreement because the allegations set out in the complaint and amended complaint "speak only to fraud in the inducement as to the entire subscription agreement and fail to allege or set out any facts concerning the specific question whether the forum-selection clause was obtained by fraud"). Here, the Amended Complaint does not allege that the forum-selection clause was obtained by fraud.

155524

rules of public order and/or they violated a rule intended for the protection of a private party." AC at ¶¶ 52, 53 (citing La. Civ. Code art. 1948, *et seq.*, and La. Civ. Code art. 2029, *et seq.*). Those allegations altogether misstate the law regarding the state registration requirements as well as the facts.

Federal law expressly *preempts* state registration requirements and, therefore, SAI, as a federally-registered adviser, is not required to be registered with the State of Louisiana.[2] As enacted by the National Securities Markets Improvement Act of 1996, Section 203A of the Investment Advisers Act preempts state registration requirements for advisers registered with the United States Securities and Exchange Commission ("SEC"). *See* 15 U.S.C. § 80b-3a(b)(1)(A) ("No law of any State or political subdivision thereof requiring the registration, licensing, or qualification as an investment adviser or supervised person of an investment adviser shall apply to any person" federally registered.).  As evident from the attached Form ADV, available publicly on the SEC's website, SAI has been federally registered since 1977 and, therefore, was registered pursuant to federal law at all times relevant to the Amended Complaint. *See* Registration Status page of Form ADV attached to Declaration of Meredith Cunningham at Exhibit 2 (noting SEC registration approved 8/11/1977).[3]  Plaintiffs do not allege otherwise.

The 1996 amendments to the Investment Advisers Act of 1940 similarly limited a state's authority to require the registration of representatives who work for federally registered advisers.

---

[2] SAI has made notice filings to the state of Louisiana since October 2001 -- even though Louisiana did not enact a notice filing requirement until June 2008, years *after* Plaintiffs decided to invest through the PAS program according to their Complaint. *See* Registration Status page of Form ADV attached to Declaration of Meredith Cunningham at Exhibit 2 (noting notice filings made in Louisiana effective 10/17/2001). *See also* La. R.S. § 51:703(D)(2) ("It shall be unlawful for any federal covered adviser to conduct advisory business in this state unless, prior to acting as a federal covered adviser in this state, such person files such documents as have been filed with the United States Securities and Exchange Commission with the [Louisiana Commissioner of Financial Institutions]."); La. Act No. 274 of 2008 (enacting La. R.S. § 51:703(D)(2)).

[3] The Court is "permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). Forms ADV, including those for SAI, are publicly available on the SEC's website, at www.advisorinfo.sec.gov. SAI's Form ADV can be accessed electronically via the SEC's website by searching the IARD/CRD Number 104555.

7

The IAA provides that "[n]o law of any State or political subdivision thereof requiring the registration, licensing, or qualification as an investment adviser or supervised person of an investment adviser shall apply to any person . . . that is [federally] registered . . . as an investment adviser, or that is a supervised person of such person, except that a State may license, register, or otherwise qualify any investment adviser representative *who has a place of business within that State*." *See* 15 U.S.C. § 80b-3a(b)(1)(A) (emphasis added). States may therefore only require the registration of representatives of federally registered advisers if they maintain a place of business in the state. Messrs. Gibson, Skow, and Davis did not maintain a place of business in Louisiana, did not hold themselves out as being in Louisiana, and Plaintiffs make no allegations to the contrary. *See* AC at ¶ 1 (alleging that the individual defendants reside and work in Texas). As out-of-state registered representatives who work for a federally registered advisor, they were authorized to do business in Louisiana without being registered in Louisiana as investment adviser representatives.[4]

By virtue of Defendant SAI's status as a federally registered adviser and the individual defendants' status as representatives of a federal registered investment adviser, they were permitted to conduct advisory business in Louisiana. Thus, any alleged representation by any of the defendants that they were authorized to do advisory business in Louisiana would have been, in fact, correct. Here, the Amended Complaint alleges that the only representation that Mr. Davis made to Plaintiffs regarding his registration status was a "fact card that stated, Mr. Davis is a

---

[4] Notwithstanding that out-of-state registered representatives who work for federally registered advisors did not need to register with Louisiana, it is worth noting that until June 2008, there was no requirement that any investment advisor representative be registered with the Louisiana. The same June 2008 amendment to the Louisiana Securities Act that required notice filings by federally registered advisers, for the first time, required the registration of investment adviser representatives. *See* La. R.S. § 51:703(D)(3) ("The procedure relative to the registration of a salesman, as provided for in Subsection C of this Section, shall also apply to the registration of an investment adviser representative."); La. Act No. 274 of 2008 (enacting La. R.S. § 51:703(D)(3)). Thus, even if these Fidelity representatives were required to register with Louisiana -- which they were not -- such requirement was not in effect until June 2008, well after the accounts at issue were opened.

155524

Registered Investment Adviser Representative of Strategic Advisers, Inc., licensed to conduct business in your state." AC at ¶ 33. That statement contains no misrepresentation: Mr. Davis and SAI were licensed to conduct business in Louisiana by virtue of SAI's federal registration. Thus, any allegation by Plaintiffs that such a representation was misleading due to their mistaken theory that the individual defendants were required to register separately with the State of Louisiana as adviser representatives or that SAI was required to do so, fails as a matter of law. Plaintiffs simply cannot bring a claim premised on alleged failure to register, and they cannot claim to have lacked consent under La. Civ. Code art. 1948.  Nor can Plaintiffs claim that they did not give free consent to enter into the agreement under La. Civ. Code art. 2031 based on any misunderstanding regarding registration status.[5] Count I must therefore be dismissed.

### 2.   Plaintiffs Cannot Seek Rescission Or Nullity Based On Alleged Failure To Execute Services.

Plaintiffs' other "grounds" for seeking to avoid their contract with SAI are similarly flawed. Plaintiffs allege they are entitled to rescission because SAI failed to "execute the services for the Ruggs in disregard for their financial interest as required in the marketing literature, Agreement, and Agreement Package." AC at ¶ 54. However, neither rescission nor nullity claims can arise from a failure to *execute*.  Rescission or nullity may be allowed only when there exists some defect in the *formation* of an agreement, which Plaintiffs have not  -- and could not  -- allege. *See, e.g.*, La. Civ. Code art. 2029 ("A contract is null when the requirements for its formation have not been met."); La. Civ. Code art. 1948 ("Consent may be vitiated by error,

---

[5] Defendants assume that in citing La. Civ. Code art. 2029, *et seq.* and claiming that Defendants "violated rules of public order and/or they violated a rule intended for the protection of a private party", Plaintiffs intend to allege that they did not give free consent, under Article 2031, and the Agreement therefore "violates a rule intended for the protection of private parties." Nowhere do Plaintiffs provide allegations to support a claim that the Agreement was illicit or immoral and therefore violated a rule of public order, under Article 2030.

fraud, or duress"); *see also* La. Civ. Code arts. 1921, 1964 (providing that duress or incapacity may be basis for rescission).

Massachusetts courts take a similar view -- fraud in the inducement must be supported by allegations aimed at improprieties in a contract's *formation*. To establish fraud in the inducement, the claiming party must show "misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statements to the detriment of the person relying." *Commerce Bank & Trust v. Hayeck*, 46 Mass. App. Ct. 687, 692 (1999).

Here, the Ruggs allege that they were induced into entering the Agreement as a result of promises and statements made by SAI, but they do not allege how any promise or statement was fraudulent at the time it was made. *See McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 709 (1990) (an expression of intention may be actionable if "the statements *misrepresent the actual intention* of the speaker and were relied upon by the recipient to his damage.") (emphasis added); *see also Barrett Assoc., Inc. v. Aronson,* 346 Mass. 150, 152 (1963).  At best, the Amended Complaint alleges only a failure to predict and describe what actually occurred in the future.  It does not, as it must, allege that at the time of the execution of the Agreement, SAI promised to annually rebalance the Ruggs' portfolio *knowing* it never would do so.

Plaintiffs' allegations regarding SAI's deficiencies in *performance* under the agreement (AC at ¶ 54) have no relevance to the circumstances of the agreement's formation and, therefore, do not state a claim for rescission or nullity.  This count of the Amended Complaint should be dismissed.

Separately, even if the Agreement were voidable by reason of a fraudulent misrepresentation on SAI's part, Plaintiffs' acceptance of the benefit of the Agreement for a period of seven years, ratifies any alleged fraud in the inducement.  Because contracts induced

155524

by fraudulent misrepresentations are not void *ab initio*, but merely voidable, *Shaw's Supermarkets, Inc. v. Delgiacco*, 410 Mass. 840, 842 (1991) (contract based on fraudulent misrepresentations voidable, not void), Massachusetts common law has long instructed that ". . . a plaintiff seasonably may rescind a contract which he has been induced to enter into in reliance upon false and fraudulent representations as to material facts." *Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc.*, 831 F. Supp. 920, 927-928 (D. MA. 1993) (quoting *McGrath v. C.T. Sherer* Co., 291 Mass. 35, 58, 195 N.E. 913, 925 (1935)). The Ruggs were obligated to, but did not, seasonably disavow the contract after its execution in 2001, and therefore, their attempt to void the contract must fail. *Elias Bros.*, 831 F. Supp. at 927-928 (quoting *Solomon v. Birger*, 19 Mass. App. Ct. 634, 638, *rev. denied*, 395 Mass. 1103 (Mass. 1985) ("As with any equitable remedy, 'actions for rescission must be brought with reasonable promptness.'")).

The Amended Complaint's allegations assert that while the Ruggs accepted the benefits from their PAS accounts starting in February 2001 (AC at ¶ 31), at no point did the Ruggs ever try to avoid the effects of their Agreement and restore things to the status quo. The Amended Complaint contains numerous allegations, any one of which is sufficient to establish ratification; the allegations acknowledge the Ruggs were aware for several years that they were not receiving the contractual performance that was allegedly promised and allegedly induced them to enter into the Agreement. *See e.g.* AC at ¶¶ 42, 44, 45, 46, and 48.

These allegations make clear that even if the Ruggs were fraudulently induced to enter into the Agreement based upon promises by SAI to perform annual reviews or to reduce stock exposure, the Ruggs were clearly aware that such alleged promises were not being fulfilled. By doing nothing until now, the Ruggs have ratified the Agreement and waived any right to avoid its effects. *See In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st. Cir. 1989) (affirming grant of

155524

partial summary judgment and finding delay of over a year and a half unreasonable as a matter of law and thus constitutes ratification); *Dorn v. Astra USA*, 975 F. Supp. 388, 393 (D. Mass. 1997) (awarding defendant summary judgment and finding plaintiffs' delays in bringing suit of between eleven and thirty-four months unreasonable as a matter of law and contract ratifying); *Elias Bros.*, 831 F. Supp. at 927-928 (delay of over three years not sufficiently prompt to permit repudiation of contract); *see also* 7 A. Corbin, *Contracts* § 28.8 at 59 (rev. ed. 2002) ("The subsequent conduct of one who seeks to set aside a transaction voidable on account of fraud or duress bars him from relief if such conduct amounts to a waiver or affirmance of the transaction.").

In sum, the alleged facts demonstrate the Ruggs should not, after having accepted the benefit of the PAS account during 2001-2008, be permitted to use perfect hindsight to turn back the clock and escape an Agreement signed in 2001. "To find otherwise would, under the facts presented, reward one who is content to profit from a voidable deal and who seeks avoidance only when economic reversal appears on the scene; such an evasion is contrary to law." *Hills v. Chambers*, No. 96-0072B, 2000 WL 1532335, *10 (Ma. Super. Aug. 18, 2000). And Louisiana law is no different.[6] *See, e.g., Bossier Marble v. Kelly's Truck Term*, 530 So. 2d 1198, 1199 (La. App. 2 Cir.), *writ denied*, 532 So. 2d 133 (La. 1988) (finding that defendant was bound to agreement to pay an additional $60 per shower stall where defendant allowed the showers to be installed and accepted the benefits of the contract).

---

[6] LSA-C.C. art. 1843 provides: "Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.   An express act of ratification must evidence the intention to be bound by the ratified obligation."

155524

**3.    Plaintiffs Have Not Alleged A Violation Of The Investment Advisers Act Giving Rise To Rescission Or Nullity.**

To the extent that the Amended Complaint asserts that the Ruggs are entitled to rescission under section 215 of the IAA for its alleged violation of section 206,[7] the antifraud provisions of the IAA (and presumably the regulations thereunder), the claim must plead fraud with particularity and allege specific facts giving rise to a strong inference that any defendant acted with scienter in accordance with the pleading standards set forth by the PSLRA.[8] *See Carroll v. Bear Stearns & Co.*, 416 F. Supp 998 (S.D.N.Y. 1976) (dismissing complaint and denying leave to amend, and holding that the pleading requirements with respect to particularity and scienter for claims based on Section 206 of the Investment Advisers Act, 15 U.S.C. s 80b-6 are the same as those for section 10b and rule 10b-5 violation.).

The Amended Complaint does not meet these standards. Plaintiffs fail to plead fraud with the requisite particularity, and Plaintiffs fail to allege specific facts giving rise to a strong inference that any Defendant acted with scienter.[9] Plaintiffs fail to allege a single specific fact --

---

[7] Section 206 is the IAA counterpart to section 10b of the Securities Exchange Act of 1934.

[8] The Ruggs' prayer for relief also significantly overstates the remedy for claims arising under the IAA. Where rescission is awarded in a private action under the IAA to void an investment advisers contract, the rescinding party may only have restitution of consideration given under the contract (*i.e.* management fees), less any value conferred by the other party. Restitution does not include compensation for any diminution in value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979); *see also Federal Sav. and Loan Ins. Corp. v. Shearson-Am. Exp., Inc.*, 658 F. Supp. 1331) (D. P.R. 1987) (implied private remedy exists under IAA for claims limited to restitution for any fees or consideration paid).

[9] The PSLRA also incorporates the Rule 9(b) requirements into the pleading standard for federal securities fraud claims. *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431 (5th Cir. 2002). Plaintiffs fail to state a claim for the independent reason that they fail to plead fraud in compliance with Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) (requiring that a party state "with particularity" the circumstances constituting the alleged fraud). "This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations omitted). Additionally, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth specific facts supporting an inference of fraud." *Id.* The Ruggs fail to state why any statements made to them were fraudulent, thus all claims must be dismissed.

not a single document, meeting, or conversation -- that supports any inference, let alone a strong inference, that the statements Plaintiffs challenge were knowingly false when made.

Allegations relating to statements of future portfolio composition as well as charges of portfolio mismanagement are simply not actionable as a matter of law under long-established principles of federal securities law. *See, e.g., Carroll v. Bear Stearns,* 416 F. Supp. 998 (granting dismissal for failure to state a claim of fraud or deceit under the IAA where allegations were that investment advisers exercised poor business judgment in fulfilling their contractual obligations to customer). SAI's alleged failure to predict the precise timing and magnitude of a historically unprecedented drop in stock and bond prices or the inevitable financial impact on the Ruggs' investment portfolio, is simply not fraud. *See, e.g., Raab v. General Physics Corp.,* 4 F.3d 286, 291 (4th Cir. 1993) (affirming dismissal of federal securities fraud claims, recognizing that "hindsight does not establish fraud. If it did, any drop in the price of shares would result in lawsuits from disappointed investors.").

Furthermore, Plaintiffs allege violations of "17 CFR 275.206", but identify no particular section of that regulation. Neither the Court nor Defendants should have to guess what provision of a regulation Plaintiffs claim Defendants violated. For that reason alone the claim should be dismissed.

However, even if we assume that Paragraphs 57 and 60 of the Amended Complaint are an attempt to allege that SAI violated 17 C.F.R. 275.206(4)-1, which applies to advertisements by investment advisers, and that Paragraphs 58 and 59 appear to be allegations that FBS and SAI failed to disclose information concerning their alleged dual-employment of Anthony Gioco and Mr. Gibson, neither of these allegations supports a claim that FBS or SAI violated the IAA.

155524

Plaintiffs allege that "SAI published misleading marketing literature by disseminating the Efficient Frontier Curve which overstated the expected return on the Ruggs' PAS accounts in violation [of] 37 CFR 206."[10] AC at ¶ 60.  However, Plaintiffs do not allege the Efficient Frontier Curve was disseminated specifically to them to project a return on their specific investments.  Rather, they allege the Efficient Frontier Curve was merely disseminated in market literature.  The Efficient Frontier Curve is a well-known demonstrative tool that uses historical data to chart a well-accepted relationship between risk and return. *See, e.g.,* Thomas S.Y. Ho & San Bin Lee, *The Oxford Guide to Financial Modeling: Applications for Capital Markets* at 30 (Oxford Univ. Press 2004) ("[t]he efficient frontier is the portfolio of stocks that offers the highest expected returns for a given risk level"); Jeremy J. Siegel, *Stocks for the Long Run* 36 (McGraw Hill 2002) ("[t]his curve, called the *efficient frontier*, is the heart of modern portfolio analysis and is the foundation of asset allocation models").  Plaintiffs allege *no facts* to suggest how the inclusion of the Efficient Frontier Curve in marketing materials could be misleading.

Even if the Ruggs mistakenly viewed the generic Efficient Frontier Curve as stating "the expected return on the Ruggs' PAS accounts" (AC at ¶ 60), they do not allege the expected return that was stated or what return they actually realized.  Nor do, or can, Plaintiffs allege that SAI knew the expected rate of return for the market to be overstated. At best, Plaintiffs allege they received marketing literature that overstated the returns that they *actually* realized.  But Plaintiffs, allegedly experienced investors (AC at ¶¶ 15 & 16), cannot claim to be ignorant of the fact that *actual* stock market returns could prove to be less than *expected*.  Nor do Plaintiffs point

---

[10] Defendants assume Plaintiffs intended to cite 17 C.F.R. § 275.206 here, rather than 37 C.F.R. 206. There is no 37 C.F.R. 206, and Title 37 applies to Patents, Trademarks, and Copyrights.

to any provision of the IAA that would be violated by such a representation.[11] This allegation is wholly insufficient under the applicable pleading standards. *Iqbal*, ____ U.S. ____, 129 S. Ct. at 1949 ("[a] claim has facial plausibility when *the plaintiff pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Similarly, Plaintiffs' allegations regarding the alleged undisclosed dual employment status of Messrs. Gioco and Gibson (AC at ¶¶ 58 & 59) "in violation of 17 CFR 275.206" also fails. 17 C.F.R. § 275.206(4)-4 provides that an investment adviser must disclose all material facts regarding the financial condition of the adviser and any material legal or disciplinary events. *See* 17 C.F.R. § 275.206(4)-4(a). However, Plaintiffs cannot claim that any nondisclosure regarding alleged dual employment amounted to a misrepresentation regarding financial condition or disciplinary history. Most importantly, Plaintiffs do not allege how they could have been harmed by any alleged dual employment. Instead, Plaintiffs haphazardly fish for some violation of the IAA. None exists.

Further, to the extent Plaintiffs allege a misrepresentation under Section 206 of the IAA (15 U.S.C. § 80b-6) based on an alleged failure to register in Louisiana, this theory must also be dismissed because of the federal preemption of registration requirements, as described above. For all of these reasons, Count I must be dismissed.

---

[11] 17 C.F.R. 275.206(4)-1 prohibits any advertisement:

> Which represents, directly or indirectly, that any graph, chart, formula or other device being offered can in and of itself be used to determine which securities to buy or sell, or when to buy or sell them; or which represents directly or indirectly, that any graph, chart, formula or other device being offered will assist any person in making his own decisions as to which securities to buy, sell, or when to buy or sell them, without prominently disclosing in such advertisement the limitations thereof and the difficulties with respect to its use.

*See* 17 C.F.R. § 275.206(4)-1(3). Plaintiffs do not allege that any marketing materials contained any such representations.

155524

### C. Count V For Negligence/Gross Negligence Must Be Dismissed Because Plaintiffs Do Not Allege Willful, Wanton, And Reckless Conduct.

The Amended Complaint contains no allegations even approaching gross negligence. Under Louisiana law, "gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence." *Houston Exploration v. Halliburton Energy Serv.*, 269 F.3d 528, 531 (5th Cir. 2001). In other words, "one is grossly negligent when he 'has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Id.* at 532 (quoting *State v. Vinzant*, 200 La. 301, 315 (1942)). Nowhere do Plaintiffs allege willful, wanton, and reckless conduct, or any intentional act.[12]

Plaintiffs essentially allege, in paragraphs 45, 46, and 47, that Defendants did not review Plaintiffs' Investor Profile Questionnaire or consult with SAI's Investment Management Team annually as promised. These allegations -- really allegations of breach of contract, which Plaintiffs separately claim -- do not amount to gross negligence any more than they amount to

---

[12] Under Massachusetts law gross negligence "is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. . . . It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure." *Christopher v. Father's Huddle*, 782 N.E.2d 517, 529, 57 Mass. App. Ct. 217, 230-31 (2003). Lousiana law is substantively similar. *See, e.g., Rabalais v. Nash*, 952 So.2d 653 (La. 2007) (discussing Louisiana law -- that gross negligence "has a well-defined legal meaning distinctly separate, and different, from ordinary negligence" -- and observing that gross negligence has been defined, inter alia, as: "want of even slight care and diligence"; "want of that diligence which even careless men are accustomed to exercise."; the "entire absence of care"; "utter disregard of the of prudence, amounting to complete neglect of the rights of others."; an "extreme departure from ordinary care or the want of even scant care"; and that "[t]here is often no clear distinction between such [willful, wanton, or reckless] conduct and `gross' negligence, and the two have tended to merge and take on the same meaning.") Under either standard, Plaintiffs have failed to allege gross negligence.

155524

"[m]ere inadvertence or honest mistake [which] does not amount to gross negligence." *Houston Exploration*, 269 F.3d at 531.

In addition, Plaintiffs provide absolutely no factual basis for their assertion that SAI and the individual defendants had "certain knowledge that the dilatory manner in which the Ruggs' accounts were managed would result in damages due to the high stock allocation." AC at ¶ 50. The Supreme Court has made clear that such bald allegations are insufficient to state a claim; Plaintiffs' claim lacks "facial plausibility" because Plaintiffs fail to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Indeed, any suggestion that the 70% equities allocation in the Ruggs' portfolios was a risk "so great as to make it highly probable that harm would follow" (*Houston Exploration*, 269 F.3d at 532) presupposes insight into the future performance of the securities markets, which Plaintiffs have not and cannot allege that SAI possessed. The Ruggs' portfolios, like any portfolio holding equities, always faced the *possibility* of declines or gains in the market. Nowhere do the Ruggs allege that SAI should have viewed the equity percentage in the Ruggs portfolios as presenting a risk of *probable harm* -- but that is what a gross negligence claim requires. Courts recognize that "[t]he market has risks; the securities laws do not serve as investment insurance." *Raab*, 4 F.3d at 291. Likewise, an unsupported claim for gross negligence cannot serve as investment insurance:  all reasonable investors realize that stock market losses are *possible*. Plaintiffs do not, and cannot, claim that SAI uniquely viewed stock market losses as *probable*. Count V for Gross Negligence must therefore be dismissed.

To the extent Plaintiffs seek to bring a claim for ordinary negligence, the claim must also be dismissed because it is based on an alleged breach of contract. *See Thomas v. State Employees Group Benefits Program*, 934 So.2d 753, 757 (La. App. 1st Cir. 2006) ("[t]he classic distinction

155524

between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons"); *see also Pinero v. Jackson Hewitt, Inc.*, No. Civ. A. 08-3535, 2009 WL 1067034, at *4 (E.D. La. Apr. 21, 2009) (same). Here, the damages Plaintiffs claim are clearly based on Defendants' alleged failure to review their accounts and reallocate as allegedly promised. Plaintiffs' claims are grounded in contract, not tort, and Plaintiffs cannot state a claim for ordinary negligence. Count V should be dismissed.

**D.      Count VI, For "Breach Of State Law" Must Be Dismissed Because Mr. Skow Was Not Required To Separately Register In Louisiana.**

As described in section III.B.1 above, Plaintiffs simply ignore the federal preemption of the registration requirements for investment advisers and their representatives.[13] Plaintiffs certainly cannot claim that they wrongly relied on Mr. Skow's registration status in opening their accounts. Further, they allege that he did not become their relationship officer until 2006, five years after they opened the accounts. AC at ¶ 36. Regardless, Mr. Skow was not required to register -- in 2006, 2008, or at any other time -- because federal law *preempts* state registration requirements as to representatives of federally registered advisers, except for representatives with a place of business in the state. *See* 15 U.S.C. § 80b-3a(b)(1)(A) ("[n]o law of any State or political subdivision thereof requiring the registration, licensing, or qualification as an investment adviser or supervised person of an investment adviser shall apply to any person . . . that is [federally] registered . . . as an investment adviser, or that is a supervised person of such person, except that a State may license, register, or otherwise qualify any investment adviser representative *who has a place of business within that State*") (emphasis added). Plaintiffs do not

---

[13] Plaintiffs allege a violation of state law because "[u]pon information and belief, Skow was not registered in the state of Louisiana as required under LSA-R.S. 51:703." AC at ¶ 75. As noted above, Section 51:703 was not enacted until June 2008. See La. Act No. 274 of 2008 (enacting La. R.S. § 51:703(D)(3)). Plaintiffs do not describe how any alleged failure to register in 2008--seven years after they opened their accounts -- caused them damages.

155524

allege that Mr. Skow ever had a place of business in Louisiana. To the contrary, they allege that he was a resident of Texas. AC at ¶ 1. Count VI must therefore be dismissed.

### E.   Count VII Must Be Dismissed Because FBS And FMR Are Not Proper Parties And Should Be Entirely Dismissed From The Suit.

In Count VII, Plaintiffs bring a claim for "FBS and FMR Liability."[14] Both FBS and FMR should be entirely dismissed from this suit. As FBS demonstrates in its separately filed motion to compel arbitration, Plaintiffs agreed to arbitrate any disputes with FBS. FBS should be dismissed from this suit for that reason alone.

Further, Plaintiffs' attempt to impose liability on FBS and FMR "for the acts and omissions of SAI as they constitute a single business enterprise" (AC at ¶ 77) should be rejected outright. The single business enterprise theory has been applied only sparingly by Louisiana courts, and never in the circumstances presented here. Instead, the Louisiana Supreme Court recognizes the importance of respecting the corporate form, including the separation between a parent corporation and its subsidiary.  See *Bujol v. Entergy Servs., Inc.*, 922 So. 2d 113 (La. 2006).   Even where the single enterprise theory has been recognized, the courts consider a variety of *eighteen* factors in deciding if it should apply.  *See Green v. Champion Ins. Co.*, 577

---

[14] The Ruggs have named other parties including FBS and FMR Corp because they, for some unexplained reason, apparently think that SAI may not be able to meet any judgment that might be awarded.  As set out herein, this is not true and the claims against these defendants must be dismissed.

155524

So. 2d 249, 257-58 (La. App. 1st Cir. 1991).[15]  However, Plaintiffs fail to allege even one. Thus, the Amended Complaint provides the Court no grounds upon which to find that FBS, FMR, and SAI are a single business enterprise, nor does it contain allegations sufficient to give rise to FBS or FMR owing an independently arising duty to Plaintiffs.  *See Bujol*, 833 So.2d at 996 (Lanier, J., concurring in part and dissenting in part).

Further, the purpose of the single business enterprise theory, when it is sparingly used, is to prevent fraud or achieve equity where, for example, the subsidiary cannot meet its financial obligations or is otherwise judgment-proof.  *See In re Ark-La-Tex Timber*, 482 F.3d 319, 335 (5th Cir. 2007). Where "these justifications for disregarding a corporate entity" do not exist, the doctrine will not be applied.  *Id.*  Here, Plaintiffs do not allege that their claims against SAI must

---

[15] The factors are:

> 1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; 2. common directors or officers; 3. unified administrative control of corporations whose business functions are similar or supplementary; 4. directors and officers of one corporation act independently in the interest of that corporation; 5. corporation financing another corporation; 6. inadequate capitalization ("thin incorporation"); 7. corporation causing the incorporation of another affiliated corporation; 8. corporation paying the salaries and other expenses or losses of another corporation; 9. receiving no business other than that given to it by its affiliated corporations; 10. corporation using the property of another corporation as its own; 11. noncompliance with corporate formalities; 12. common employees; 13. services rendered by the employees of one corporation on behalf of another corporation; 14. common offices; 15. centralized accounting; 16. undocumented transfers of funds between corporations; 17. unclear allocation of profits and losses between corporations; and18. excessive fragmentation of a single enterprise into separate corporations.

*Green*, 577 So.2d at 257-58.

155524

be expanded to FBS and FMR to prevent fraud or achieve equity.[16]  Indeed they could not do so.

According to SAI's Form ADV on file with the SEC, SAI has over 2000 employees,

approximately 346,500 clients and manages on a discretionary and non-discretionary basis

$149,032,254,125.00.  *See Exhibit 1*, Kleekamp Affidavit, **Exhibit B** (SAI's Form ADV).  There

can be no doubt that SAI has the resources to meet any judgment that the Ruggs may recover.

### F.   The Individual Defendants Are Not Responsible For The Alleged Actions Or Omissions Of Their Employers, And Should Be Dismissed From The Suit Entirely.

Messrs. Davis, Gibson, and Skow should be dismissed from this action entirely. Plaintiffs

allege no basis to impose liability upon these individual defendants for the alleged failure to

reallocate. *See Dennis v. Copelin*, 669 So. 2d 556, 561 (La. App. 4th Cir.), *writ denied*, 675 So.

2d 1079 (La. 1996) ("corporate officers, employees and agents do not owe duties to third parties

---

[16] SAI is a Massachusetts corporation, *See Exhibit 1*, Kleekamp Affidavit, **Exhibit B**, p. 5 (SAI's Form ADV, Item 3 Form of Organization), and is therefore governed by Massachusetts corporate law. Plaintiffs have not alleged any basis for piercing the corporate veil under Massachusetts law, where "the corporate veil will only be pierced in rare situations." *Birbara v. Locke*, 99 F.3d 1233, 1239 (1st Cir. 1996). The Massachusetts Supreme Judicial Court has explained that "[u]ltimately, the decision to disregard settled expectations accompanying corporate form requires a determination that the parent corporation directed and controlled the subsidiary, and used it for an improper purpose, based on the consideration of twelve factors." *Scott v. NG US 1*, 450 Mass. 760, 768 (2008). Those twelve factors are: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Plaintiffs fail to plead these elements.

FBS LLC and FMR LLC are both Delaware Limited Liability companies.  But the law in Delaware is even more restrictive.  *See BASF Corporation v. POSM II Properties Part.*, 3608-VCS n.50 (Del.Ch. 3-3-2009) ("Delaware public policy does not lightly disregard the separate legal existence of corporations. *Gasden v. Home Pres. Co., Inc.*, Civ.A. 18888, 2004 WL 485468, at *4 (Del.Ch. Feb. 20, 2008) ("A Delaware court will not lightly disregard a corporation's jural identity."). The reason for that is that the use of corporations is seen as wealth-creating for society as it allows investors to cabin their risk and therefore encourages the investment of capital in new enterprises. *See, e.g., Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, Civ.A. 19760-NC, 2004 WL 415251, at *8 (Del.Ch. Mar. 4, 2004) (holding that a parent company was not liable for its subsidiary's breach of contract where there was no basis for piercing the  corporate veil; *Albert v. Alex Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at **8-9 (Del.Ch.) (holding that a parent company cannot be liable for its subsidiaries actions absent veil piercing or agency liability). To pierce a corporate veil, a plaintiff must show that the interests of justice require it because matters like fraud, public wrong, or contravention of law are involved. *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) (holding that veil-piercing "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved").

155524

and cannot be held liable for third persons for negligence, mismanagement, and omissions in a commercial context"). As one Louisiana court has noted:

> [t]he United States Fifth Circuit has reaffirmed that Louisiana law does not provide third parties with a cause of action against directors and officers for negligence, mismanagement, breach of fiduciary duty, or for debts of the employer. Officers, employees and agents owe no duties to third parties and cannot be found liable to third parties for their negligent acts and omissions in a commercial context, such as this case. [The individual defendants], as employees or agents of [the corporate defendant], owed a duty of care to that entity, not to any third parties such as the [plaintiffs].

*Korson v. Independence Mall I, Ltd.*, 595 So. 2d 1174, 1178 (La. App. 5th Cir. 1992) (citations omitted).

Here, Plaintiffs' claims, if any, are against SAI. Plaintiffs' claims against the individual defendants arise only in the context of those defendants acting in the scope of their employment, and should be dismissed.

## IV.    CONCLUSION

Defendants respectfully request that Counts I, V, VI, and VII of the Amended Complaint be dismissed, and that FBS, FMR, and Messrs. Gibson, Davis, and Skow be dismissed from the action altogether. Plaintiffs' Rescission/Nullity claim must be dismissed because it is premised on the incorrect assertion that Defendants were not properly registered and Plaintiffs otherwise do not allege a defect in the formation of any contract that could support rescission or nullity. Plaintiffs' Gross Negligence claim fails because nowhere in the allegations do Plaintiffs suggest willful, wanton, and reckless conduct or anything approaching an intentional act of unreasonable character. Plaintiffs' claim for ordinary Negligence must also be dismissed because Plaintiffs' claims arise from contract. Plaintiffs' claim for Breach of State Law must be dismissed because Mr. Skow was not required to separately register with Louisiana, as federal law preempts state registration requirements. The Court also should dismiss FBS and FMR from the Amended

155524

Complaint because Plaintiffs do not allege any basis for applying the rarely used single business enterprise theory. Finally Messrs. Gibson, Davis, and Skow should also be completely dismissed from the action because Plaintiffs do not claim any wrongdoing in their individual capacities.

Respectfully submitted,

*/s/ Meredith A. Cunningham*
George C. Freeman, III, 14272, T.A.
Meredith A. Cunningham, 26465
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Fax:     (504) 589-9701

David C. Boch (*pro hac vice*)
Michael R. Weissmann (*pro hac vice*)
Michael C. Moran (*pro hac vice*)
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Fax:     (617) 951-8736

*Counsel for Defendants Dan Davis,*
*Matthew David Gibson, Jerome Richard*
*Skow, Strategic Advisers, Inc., Fidelity*
*Brokerage Services LLC, and FMR LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the plaintiffs' counsel by electronic mail, court's electronic system, and/or placing same in the United States Mail, postage prepaid and properly addressed this 19th day of March, 2010.

*/s/ Meredith A. Cunningham*

155524