UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **STEPHEN H. RUGG AND PATRICIA A. RUGG** | * | **CIVIL ACTION NO.  09-1952** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **FMR CO., INC., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### MEMORANDUM ORDER

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to compel arbitration and stay proceedings [doc. # 36] filed by defendants, Matthew David Gibson and Fidelity Brokerage Services, L.L.C.[1]  For the reasons assigned below, the motion is **GRANTED**.

### Procedural Background

On October 29, 2009, Stephen H. Rugg and Patricia A. Rugg, husband and wife (collectively, "the Ruggs"), filed the instant suit in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana against FMR Co., Inc.; Strategic Advisors Inc. ("SAI"); Matthew Gibson; David Davis; and Jerome Skow.  (Petition for Damages).  The Ruggs seek recovery for financial losses that they sustained as a result of defendants' alleged gross mismanagement of their investment and retirement portfolios.  *Id*.

On November 23, 2009, defendants timely removed the case to federal court on the basis

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

of federal question and diversity jurisdiction, 28 U.S.C. §§ 1331 & 1332.  Following removal, defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative, for a more definite statement pursuant to Federal Rules of Civil Procedure 12(b)(6) & 9(b).  In response, the Ruggs filed their Supplemental, Amending, and Restated Petition for Damages ("SARP") on February 17, 2010, which, *inter alia*, effectively conceded the dismissal of FMR Co., Inc.[2] and added defendants, FMR, L.L.C. ("FMR"), and Fidelity Brokerage Services, L.L.C. ("FBS").[3]  The court thereafter permitted defendants to withdraw their motion to dismiss while preserving their right to re-urge the motion at a later time.  (Mar. 2, 2010, Mem. Order [doc. # 33]).

On March 19, 2010, defendants, Matthew David Gibson and FBS, filed the instant motion to compel arbitration and stay proceedings.  Also on that date, all defendants joined in a motion to dismiss Counts I and V-VII of the SARP, as well as the outright dismissal of defendants, FBS, FMR, Matthew Gibson, Dan Davis, and Jerome Skow pursuant to Federal Rule of Civil Procedure 12(b)(6).  Both motions have been referred to the undersigned magistrate judge.[4]  Briefing is complete; the matter is now before the court.

## Factual Background

From 1990-2000, the Ruggs opened a series of individual or joint accounts with Fidelity Brokerage Services, Inc., now known as FBS.[5]  The accounts consisted of (1) a Fidelity Plus

---

[2] *See* March 2, 2010, Mem. Order [doc. # 33].

[3] The members and citizenship of the LLCs is not alleged in the SARP.  Nonetheless, the court continues to enjoy federal question jurisdiction.

[4] The motion to dismiss will be addressed by separate report and recommendation.

[5] In response to the court's August 23, 2010, Order, defendants, FBS and Matthew Gibson submitted uncontroverted evidence establishing that Federal Brokerage Services, Inc.

account opened by both Stephen H. Rugg and Patricia A. Rugg on December 28, 1990; (2) a Fidelity Brokerage IRA opened by Stephen H. Rugg on September 16, 1998; and (3) a Fidelity Brokerage IRA opened by Patricia A. Rugg on October 31, 1999.  (M/Compel Arbitration; Affidavit of Katherine DiGennaro, Exhs. A-D [doc. # 36]).  The Ruggs also signed an Options Account Agreement on September 17, 2000, which added the ability to trade options to their joint account.  *Id*.

The applications signed by the Ruggs in connection with each of the respective accounts stated, in bold-face type above each signature line, that "[t]his account is governed by a pre-dispute arbitration clause" and that the signatory "acknowledges receipt of the pre-dispute arbitration clause" as set forth in the Customer/Options Agreements.  *Id*.  The Customer/Options Agreements attached to each application contained the following provision,

> I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BY A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC. OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., AS I MAY DESIGNATE. . . .

Fidelity Plus Account Customer Agreement at 4; Fidelity Brokerage IRA Account Application Customer Agreement at ¶ 5; Fidelity Brokerage IRA Customer Agreement at ¶ 5; *see also* Options Account Agreement at ¶ 16 (". . . shall be determined before a panel of independent arbitrators . . . ."); M/Compel Arbitration; Affidavit of Katherine DiGennaro, Exhs. A-D [doc. # 36].

By 2001, the Ruggs "had accumulated significant investments and retirement portfolios." (SARP, ¶¶ 15 & 16).  Nonetheless, because of losses that they had suffered during a market

---

merged with, and into FBS on August 28, 2000.  *See* Suppl. Memo., Affidavit of Peter D. Stahl and Exhs. A-D, thereto [doc. # 56].  As successor in interest to Federal Brokerage Services, Inc. , FBS acquired all rights and obligations of the customer agreements between the Ruggs and Federal Brokerage Services, Inc.  *Id*.; *see also* discussion, *infra*.

downturn, the Ruggs decided in 2001, with the help of FBS representatives, Matthew Gibson (a defendant in this suit) and Anthony Gioco (not a party to this action), to transfer their FBS accounts to three Portfolio Advisory Services ("PAS") accounts[6] managed by SAI. *See* SARP ¶¶ 19-22, 24, 31, 45-47. However, pursuant to the worldwide financial crisis and economic upheaval that began a few years ago, plaintiffs' PAS accounts suffered significant depreciation. *Id*., ¶¶ 79-83. Plaintiffs attribute the losses to SAI's failure to maintain an appropriate stock allocation percentage in light of plaintiffs' ages and approaching retirement/disability status. *Id*. ¶¶ 38-42. Accordingly, in November 2008, plaintiffs closed their PAS accounts, and now seek to rescind or nullify their agreement(s) with SAI and/or restitution. *See* SARP.

## Law and Analysis

I.  **ARBITRATION COMPELLED**

   a)  **Guiding Principles**

The Federal Arbitration Act ("FAA") applies to "any arbitration agreement within the coverage of the Act" which includes written agreements to arbitrate if the contract "evidenc[es] a transaction involving commerce." *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 654-56 (5th Cir. 2000) (quoting, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 103 S.Ct. 927 (1983) and 9 U.S.C. § 2). Brokerage accounts involve interstate commerce, and therefore, are subject to the FAA. *Reynolds v. York*, CIV.A. H-03-1108, 2003 WL 22880945 (S.D. Tex. Nov. 21, 2003) (citation omitted).

The FAA "provides that pre-dispute arbitration agreements 'shall be valid, irrevocable,

---

[6] The PAS accounts consisted of one joint account and two individual retirement accounts ("IRAs").

4

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (quoting 9 U.S.C. § 2). The FAA was designed to ensure that arbitration agreements are treated the same as any other contractual provision. *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 247-49 (5th Cir. 1998) (citations omitted). Indeed, § 2 of the FAA

> creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements upon the same footing as other contracts." Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, "on application of one of the parties," to stay the action if it involves an "issue referable to arbitration under an agreement in writing."

*Arthur Andersen LLP v. Carlisle*, ___ U.S. ___, 129 S. Ct. 1896, 1901-03 (2009) (citations omitted).

Courts undertake a two-step inquiry when considering motions to compel arbitration. *Washington Mut. Fin. Group v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The first step is to ascertain whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353 (1985). If this question is answered affirmatively, then the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id*.

      b)     **Plaintiffs and Movants Agreed to Arbitrate the Instant Dispute**

The agreement to arbitrate inquiry is further subdivided into two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). In answering the first question, the courts apply "ordinary state-law principles that govern the formation of contracts." *Graves v. BP Am., Inc.*, 568 F.3d 221, 222-24

(5th Cir. 2009) (citations omitted). In contrast, the courts gauge the scope of the parties' agreement "by applying the federal substantive law of arbitrability . . . ." *Id*. (citations and internal quotation marks omitted). Furthermore, although "ambiguities ... [are] resolved in favor of arbitration," with regard to the latter inquiry, this federal policy favoring arbitration, does not apply to the determination of whether the parties confected a valid agreement to arbitrate. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 *opinion supplemented on denial of reh'g,* 303 F.3d 570 (5th Cir. 2002) (quoted source omitted).

        1)       Valid Agreement to Arbitrate Between the Ruggs and FBS

In this case, the arbitration provisions were included in customer agreements which specified that their terms shall be governed and enforced by the laws of the Commonwealth of Massachusetts. *See* M/Compel Arbitration; Affidavit of Katherine DiGennaro, Exhs. A-D [doc. # 36].[7] Under Massachusetts law, a viable arbitration clause presupposes an enforceable contract which, in turn, requires mutual assent, objective evidence of an intent to arbitrate, and sufficient consideration. *Morvai v. Merrill Lynch, Pierce, Fenner & Morvai v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 56 Mass. App. Ct. 1117, 780 N.E.2d 489 (Mass. App. Ct. 2002) (unpubl.).

Neither side contests that the customer agreements at issue meet the requirements for a valid contract under Massachusetts law (or the law of any other state). Moreover, as recounted previously, FBS and the Ruggs specifically agreed that "all controversies that may arise between [them] concerning any order or transaction, or the continuation, performance or breach of this or

---

[7] The parties are free to designate the law that governs interpretation of their arbitration agreement. *See Ford, supra*. There is no suggestion that the law of Massachusetts contravenes the public policy of any other state whose law is otherwise applicable. *See* La. Civ. Code Art. 3540.

any other agreement between [them], whether entered into before, on or after the date this account is opened, shall be determined by arbitration . . ." (M/Compel Arbitration; Affidavit of Katherine DiGennaro, Exhs. A-D [doc. # 36]).

At least three of the agreements explicitly provide that they shall inure to the benefit of Fidelity Brokerage Service, Inc.'s successors, i.e. FBS, whether by merger or otherwise. *See* M/Compel Arbitration; Affidavit of Katherine DiGennaro, Exhs. A, B, & D; but see, Exh. C [doc. # 36]. In addition, the Ruggs have not contested that, as Fidelity Brokerage, Inc.'s successor entity, FBS is entitled to enforce Fidelity Brokerage, Inc.'s rights under the customer agreements. *See* August 23, 2010, Order (and plaintiffs' failure to respond to same).

        2)        <u>Plaintiffs Equitably Estopped from Opposing Arbitration with Gibson</u>

Plaintiffs contend that because Matthew Gibson was not a party to the customer agreements, i.e. a non-signatory, he cannot rely upon those provisions to compel arbitration. Indeed, when, as here, an arbitration agreement does not manifest a clear intent to benefit a signatory company's employees, Massachusetts courts are reluctant to utilize agency principles to permit the employee to compel arbitration. *Constantino v. Frechette*, 73 Mass. App. Ct. 352, 897 N.E.2d 1262 (Mass. App. Ct. 2008), *review denied*, 454 Mass. 1112 , 913 N.E.2d 868 (Mass. 2009); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465-67 (5th Cir. 2002) (nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories). Arguably, the instant case is distinguishable, however, because the non-signatory is not seeking to compel arbitration *on his own*. Rather, Gibson is joining in a motion to compel arbitration with his employer, FBS, which is a signatory to the arbitration agreements. Furthermore, under the doctrine of equitable estoppel, a nonsignatory to an arbitration clause may compel arbitration

7

under the following circumstances,

> [f]irst, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Westmoreland v. Sadoux*, 299 F.3d 462, 465-67 (5th Cir. 2002).

At a minimum, the alleged misconduct of Gibson is intertwined with plaintiffs' allegations against FBS because plaintiffs allege that FBS is vicariously liable for Gibson's actions. (SARP, ¶ 76); *see Griffin v. ABN Amro Mortg. Group Inc.*, 2010 WL 1976575 (5th Cir. May 17, 2010) (unpubl.) (claims against lending parties were substantially interdependent where they all related to mortgagors' default and subsequent foreclosure).[8]  Accordingly, plaintiffs are estopped from opposing arbitration with Gibson.

### 3) Waiver

Plaintiffs further argue that FBS and Gibson waived their contractual right to compel arbitration because of their course of conduct in this proceeding. In the Fifth Circuit, "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (citation omitted). Judicial process is "invoked" when a party has litigated a claim that it later seeks to arbitrate. *Id.* at 328-329. Stated differently, "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir.2009) (citation omitted). At a

---

[8] Under Massachusetts law, the equitable estoppel doctrine appears to be more limited. *See e.g., Vassalluzzo v. Ernst & Young LLP*, 22 Mass. L. Rptr. 654, 2007 WL 2076471 (Mass. Super. 2007). Again, however, the instant case remains distinguishable because the nonsignatory joined in the motion to compel arbitration with another signatory.

minimum, the party must "engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (citation omitted). There is a presumption against waiver of arbitration. *Id.*[9]

In this case, plaintiffs emphasize that Gibson removed this case to federal court and filed an earlier motion to dismiss before seeking to compel arbitration. Plaintiffs' argument, however, overlooks the fact that, in the absence of FBS, Gibson did not enjoy the right to compel arbitration under applicable Massachusetts law. *See* discussion, *supra*. Arbitration did not become a viable alternative in this matter until plaintiffs joined FBS after removal and after the original defendants had filed their motion to dismiss. Thereafter, FBS and Gibson filed the instant motion to compel arbitration before filing a responsive pleading.

FBS and Gibson also did not waive their right to arbitration by filing a contemporaneous motion to dismiss. A party does not waive its right to compel arbitration by filing a dispositive motion in the alternative or concurrently with a motion to compel arbitration. *See Keytrade USA, Inc.*, 404 F.3d at 897-899; *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 236-38 (5th Cir.1998).

Even if defendants had substantially invoked the judicial process, plaintiffs have neither alleged nor established any resulting prejudice. "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *In re Mirant Corp.*, 613 F.3d 584 (5th Cir. 2010) (citation omitted). The party opposing arbitration is obliged to demonstrate

---

[9] Massachusetts law regarding waiver is not inconsistent with the Fifth Circuit's approach. *See ZipRealty, Inc. v. Lopez*, 72 Mass. App. Ct. 1116, 893 N.E.2d 801 (Mass. App. Ct. 2008).

prejudice. *C.C.N. Managed Care, Inc. v. Shamieh*, 374 Fed. Appx. 506 (5th Cir. March 18, 2010) (unpubl.).

The only conceivable prejudice suffered by plaintiffs stems from the expenses they incurred to defend the pending motion to dismiss. However, plaintiffs could have deferred these costs by asking the court to stay consideration of the motion to dismiss until the arbitration issue had been resolved. In addition, plaintiffs likely would have incurred these costs in any event to support their claims in arbitration.

      c)      **Scope of the Agreement**

The court reiterates that any doubts concerning whether a dispute is covered by the scope of an arbitration agreement should be resolved in favor of arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009), *cert. dismissed sub nom., KBR Technical Services Inc. v. Jones*, ___U.S. ___, 130 S.Ct. 17564 (Mar 11, 2010) (citations omitted). Accordingly, the Fifth Circuit has held that "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id*. (citations and internal quotation marks omitted). Furthermore, "[w]hen deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted." *Id*. (citation and internal quotation marks omitted).

The Fifth Circuit distinguishes between "narrow" arbitration clauses that only encompass disputes "arising out of" the contract from "broad" clauses extending to disputes that "relate to" or "are connected with" the contract. *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citation omitted). Broad arbitration clauses "are not

limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute. *Id*.[10] Nevertheless, broad clauses are not boundless. *Id*.

The arbitration clause at issue here specifies "[t]hat all controversies that may arise between [FBS and the Ruggs] **concerning any order or transaction**, or the continuation, performance or breach of this or any other agreement between [FBS and the Ruggs], whether entered into before, on or after the date this account is opened, shall be determined by arbitration . . ." (M/Compel Arbitration; Affidavit of Katherine DiGennaro, Exhs. A-D [doc. # 36]) (emphasis added). This language evinces a broad agreement to arbitrate. *See Downer v. Siegel*, 489 F.3d 623, 626 (5th Cir. 2007); *Warfield, supra*; *Haenel v. Washington Mut. Bank*, 2007 WL 4326828 (E.D. N.Y. Dec. 6, 2007).

Plaintiffs nonetheless contend that the scope of the arbitration clause, which is set forth in the customer agreements with FBS, does not extend to their claims asserted herein which focus upon the PAS accounts. Plaintiffs further emphasize that the agreement associated with the PAS account(s) not only does not contain an arbitration clause, but also includes an integration clause: "[t]his Agreement (including the Account Application) contains the entire understanding between the parties concerning the subject matter of this Agreement." (Fidelity FundsManager Program Customer Agreement; Pl. Opp. to M/Dismiss, Exh. "I.A.3.c.p.4" [doc. # 44]) (hereinafter referred to as, "PAS Agreement").

Addressing the latter argument first, the court observes that there is no indication that

---

[10] Massachusetts law is comparable in this regard. *See Warfield v. Beth Israel Deaconess Med. Ctr., Inc.*, 454 Mass. 390, 396-98, 910 N.E.2d 317, 323-25 (Mass.), *affirmed*, 454 Mass. 390, 910 N.E. 2d 317 (Mass. 2009).

FBS's capacity under the PAS Agreement exceeded that of a third-party beneficiary. *See* PAS Agreement; Pl. Opp. to M/Dismiss, Exh. I.A.3.c.p.4 ("FBS will . . . be a third party beneficiary of this Agreement and will be entitled to *enforce* this Agreement as if it were a party") (emphasis added). As a third-party beneficiary, by definition, FBS was not a party to the PAS Agreement,[11] and has no contractual obligations to the signing parties. *Motorsport Engineering, Inc. v. Maserati SPA*, 316 F.3d 26, 30 (1st Cir. 2002) (applying Massachusetts law).[12] Thus, FBS is not bound by the integration clause which, by its terms, applies only to the "parties."[13]

Although it is manifest that plaintiffs' complaint focuses upon defendants' purported mismanagement of their PAS accounts, plaintiffs further allege that the PAS Agreement should be rescinded or nullified because of antecedent error or misrepresentation. *See* SARP, ¶¶ 51-25. Indeed, plaintiffs state that FBS used confidential information from the Ruggs' FBS accounts to target them as candidates for the PAS accounts and the associated agreements with SAI. *Id*. at ¶ 55. The Ruggs also purportedly relied upon alleged misrepresentations by dual employees of FBS and SAI: Gibson and Gioco. (SARP, ¶¶ 58, 65-67, 26-31, 7, 9). Plaintiffs further allege that the individual defendants advised plaintiffs to transfer their FBS accounts to SAI's PAS accounts, and that plaintiffs ultimately did so. (SARP, ¶¶ 24, 30).

---

[11] FBS agrees that it was not a party to the PAS Agreement. (Reply Memo., pg. 6, n1).

[12] Especially, when, as here, the third-party is not seeking to enforce any rights under the agreement. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 363 (5th Cir. 2003) (party not bound to terms of agreement as a third-party beneficiary when it never sought to enforce the terms of the agreement).

[13] It also seems that plaintiffs are selectively invoking the integration clause. If given full effect, the clause would foreclose plaintiffs' ability to argue that they reasonably relied upon defendants' pre-agreement misrepresentations.

The facts of this case are similar to the circumstances in *Downer v. Siegel*. In *Downer*, the plaintiffs' asset management agreements with Dain Rauscher contained an arbitration clause that applied to "all controversies which may arise between . . . [the parties], concerning any account maintained by the client with [Dain Rauscher] . . ." *Downer*, 489 F.3d at 626. Dissatisfied with the result of investments made at the suggestion of their financial adviser and in the form of transfers from their Dain Rauscher accounts to a third party, plaintiffs filed suit against the financial advisor alleging fraud in the inducement of their account agreements and violations of securities regulations. *Id*.

The Fifth Circuit held, however, that the broad language of the arbitration clause covered "all controversies between the plaintiffs and former or current employees of [Dain Rauscher] concerning any account the plaintiffs maintained at [Dain Rauscher]." *Id*. The court emphasized that because the investments were made from funds deposited in the plaintiffs' Dain Rauscher accounts, one reasonable interpretation of the clause was that the plaintiffs' claims concerned their Dain Rauscher accounts. *Id*. That there were other interpretations of the arbitration clause which could support a finding that plaintiffs' claims were outside the arbitration clause, did not compel a different result. *See Downer, supra*.

Similarly, in this case, one reasonable interpretation of the subject arbitration clause is that it encompassed the "transactions" between FBS and the Ruggs which culminated in the transfer of their funds from their FBS accounts to the PAS accounts. Moreover, these transactions play a central role in the factual allegations that support plaintiffs' claims for rescission and nullity. In fact, it also can be said that plaintiffs' tort claims and breach of fiduciary claims against Gibson and FBS necessarily rely upon the initial FBS agreement(s) to

13

establish a basis for the legal duty owed by defendants to plaintiffs. *See Kadlec Medical Center v. Lakeview Anesthesia*, 527 F.3d 412, 418 (5th Cir.) (citation omitted), *cert. denied by, Lakeview Anesthesia Associates v. Kadlec Medical Center*, ___ U.S.___,129 S.Ct. 631 (2008) (a legal duty is an element of intentional or negligent misrepresentation); *see Downer, supra* (plaintiffs cannot maintain their underlying action without discussing the asset management agreement and why their financial advisor was in charge of their money).

In sum, the court finds that the scope of the arbitration provision in the Customer Agreements encompasses the instant claims against FBS and Gibson.

### d) No External Legal Constraints Foreclose Arbitration

The parties have not identified any statute or policy that would render the claims nonarbitrable, nor is this court aware of any. Under these circumstances, the court need not conduct the second step of the analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).

Consequently, the court finds that movants have satisfied the requirements to compel arbitration of this matter.

## II. PROCEEDINGS STAYED[14]

Section 3 of the FAA provides

> for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. This provision is mandatory: If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay.

*In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citations and internal quotation marks omitted).

Thus, the instant proceedings against FBS and Gibson must be stayed.

---

[14] Plaintiffs' memorandum does not address, and therefore, does not contest the propriety of staying this matter against all defendants.

In addition, the Fifth Circuit has recognized that under § 3 of the FAA and/or pursuant to its discretionary authority, a court may extend a stay to other parties in a suit who are not obliged to arbitrate their claims. *Hill v. G E Power Systems, Inc.*, 282 F.3d 343, 347-348 (5th Cir. 2002) (and cases cited therein). Either way, the governing considerations appear to be the same: "the similarity of operative facts, the inseparability of claims, and the effect of the litigation on the arbitration." *See Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 344 (5th Cir. 2004); *Hill, supra*.

Applying those factors here, the court observes that many of the operative facts in the matters to be arbitrated are also at issue in plaintiffs' claims against the non-arbitrating defendants. For instance, plaintiffs allege that Gibson and Gioco acted in a dual capacity as employees of FBS and SAI. Thus, at a minimum, their alleged misrepresentations will have a bearing on both FBS and SAI's liability. Moreover, because SAI's potential liability derives, at least in part, from Gibson and Gioco's actions, the claims are inherently inseparable from the claims against Gibson. *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000). Plaintiffs also allege that FBS and defendant FMR are liable for the acts and omissions of SAI because they constitute a single business enterprise. (SARP, ¶ 77).[15] Finally, permitting the litigation to proceed here would risk inconsistent results with the arbitration proceedings and thus, "substantially impact" the arbitration. *Waste Management, Inc., supra*. As the Fifth Circuit noted, an arbitrator could not help but be influenced by a district court's decision on the merits. *Id*.

Accordingly, upon consideration of the relevant factors, the undersigned finds that

---

[15] Defendants, Skow and Davis are alleged to be employees of SAI and FBS. (SARP, ¶¶ 11-14).

15

plaintiffs' claims against all defendants in this matter should be staying pending resolution of the arbitration proceedings. *Francisco v. Stolt-Nielsen, S.A.*, 2002 WL 31697700 (E.D. La. Dec. 3, 2002), *affirmed*, 293 F.3d 270 (5th Cir. 2002) ("Were the Court to first compel arbitration with signatories and then permit plaintiff to proceed in a second lawsuit against the signatory's parent corporation and insurer, the arbitration proceedings previously ordered would be effectively rendered meaningless.").[16]

## Conclusion

For the reasons set forth above,

The motion to compel arbitration and stay proceedings [doc. # 36] filed by defendants, Matthew David Gibson and Fidelity Brokerage Services, L.L.C. is hereby GRANTED. Plaintiffs shall proceed to arbitrate their claims against FBS and Matthew David Gibson, as provided herein; the matter is STAYED in its entirety pending the outcome of arbitration proceedings. **The stay order will remain in abeyance until immediately following the district court's consideration of the undersigned's recommended disposition of the pending motion to dismiss.**

IT IS SO ORDERED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of September 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[16] A stay against all defendants also is warranted under Massachusetts law. *See Bowlby v. Carter Mfg. Corp.*, 138 F. Supp.2d 182, 188 (D. Mass. 2001).